(No. 27396.—
(No. 27422.—
CUMMINGS-LANDAU LAUNDRY MACHINERY Co., Plaintiff in Error and Appellant, *vs.* HARRY KOPLIN *et al.,* Defendants in Error and Appellees.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

GURMAN & EBERLE, and POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, SAMUEL P. GURMAN, and MARVIN S. FENCHEL, of counsel,) all of Chicago, for plaintiff in error and appellant.

LEVINSON, BECKER, PEEBLES & SWIREN, (DON M. PEEBLES, HERBERT PORTES, and THEODORE R. SHERWIN, of counsel,) all of Chicago, for defendants in error and appellees.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

In 1935, The Zephyr Laundry Machinery Company, hereinafter referred to as Zephyr, was engaged in the business of manufacturing laundry and dry-cleaning machinery and equipment. These products were sold under the trade name of "Zephyr." At the same time, Murray Cohn was engaged in the business of selling similar machinery and equipment. On December 2, 1935, these parties entered

into an agreement which was therein designated as a sales agreement for exclusive territory. Under this agreement, Cohn agreed to purchase from Zephyr, and Zephyr agreed to sell to him, laundry and dry-cleaning machinery, parts, accessories and equipment. It was recited in the contract, that it was agreed, and, for the purposes of the contract it should be considered as having been made in the city of Chicago, and all sales thereunder likewise made in the city of Chicago. The agreement was to be in force for a term of three years. It contained an automatic renewal clause for like three-year periods, successively. It was provided, however, that during the second three-year renewal period, either party might terminate the contract upon giving to the other party one hundred and twenty days' notice of the intention so to do.

By the contract Zephyr granted to Cohn the sole and exclusive right to the sale and distribution of all laundry and dry-cleaning machinery, parts, accessories and equipment, manufactured or sold by it, or its subsidiaries, or any corporation, firm or partnership which it controlled, or its successors or assigns, in certain territory described, in certain States enumerated in the contract. The contract contained further provisions relating in detail to the manner in which the purchases should be made and as to payment therefor. It is contended that it gave to Zephyr the power to fix the prices at which the machinery and equipment should be sold by Cohn.

In May, 1937, Cohn assigned the contract to Cummings-Landau Laundry Machinery Company. This company will hereinafter be referred to as Cummings-Landau. In January, 1940, Zephyr assigned its interest in the contract to Harry Koplin, doing business as The Zephyr Company. This assignment was consented to by Cummings-Landau. The record indicates that at all times Zephyr belonged to Koplin and Cummings-Landau belonged to Cohn. Koplin was doing business interchangeably in the name of the

corporation, in his own name individually, and in the name of the corporation as a trade name. The same is true of Cohn. He was doing business in his own name individually, and in the corporate name of Cummings-Landau, interchangeably. It is apparent that the real parties, at all times, were Koplin on one side and Cohn on the other. The corporations, if there were such, and the corporate names, on both sides, were used only as a convenience, or *alter ego* of the individuals.

On April 14, 1941, Cummings-Landau filed the complaint in cause No. 27396, against Zephyr and Koplin and others, doing business under various trade names. The complaint alleged that the defendants had violated the exclusive sales provisions of the contract of December 2, 1935, and that the defendants had engaged in making sales of the character mentioned in the contract, in Cummings-Landau's exclusive territory, in competition with it, in violation thereof. The prayer of the complaint was that a permanent injunction issue, restraining Zephyr and Koplin from making sales or interfering with the exclusive agency granted to Cummings-Landau by the contract, in the territory described in the contract. It also asked for judgment for damages and for a temporary writ of injunction.

On May 28, 1941, after answers were filed, and upon a hearing in which counsel for both parties participated, a temporary injunction was granted as prayed in the complaint. Thereafter, on May 1, 1942, a motion was filed by Zephyr, Koplin and others, to dissolve the temporary injunction. Upon a hearing the motion was denied. From the order denying the motion to dissolve the injunction, an appeal was taken to the Appellate Court, First District, by Zephyr and Koplin.

Cause No. 27422 originated in a petition filed in the pending suit, on January 9, 1942, by Cummings-Landau for a rule on Zephyr and Koplin to show cause why they should not be held in contempt for a violation of the tem-

porary injunction. An answer was filed to this petition. Upon a hearing on March 31, 1942, the court found Zephyr and Koplin guilty of contempt. They were ordered, jointly, to pay a fine of $3000. It was further ordered that Koplin stand committed to the county jail until the fine was paid. An appeal from that order was taken by Zephyr and Koplin to the Appellate Court for the First District.

On the appeal from the order denying the motion to dissolve the injunction, the Appellate Court held that the contract violated the Sherman Anti-Trust Act. (15 U. S. C. A. 1.) This holding was based on the provisions of the contract relative to the prices at which the machinery and equipment should be sold by Cohn. It reversed the order of the superior court, overruling the motion to dissolve the injunction. To reverse that decision of the Appellate Court, the writ of error was sued out of this court by Cummings-Landau in cause No. 27396.

On the appeal from the order adjudging Zephyr and Koplin guilty of contempt, the Appellate Court held that inasmuch as it had held the contract invalid on the appeal from the order denying the motion to dissolve the injunction, the contempt proceedings abated. It was of the opinion that the parties could not be held in contempt, because the order granting the injunction had been reversed. It reversed the order of the trial court. On petition of Cummings-Landau we granted leave to appeal from that judgment of the Appellate Court. This is cause No. 27422. The two cases have been consolidated for opinion in this court.

We will first dispose of cause No. 27396, which is here on writ of error. As already stated, this case was heard by the Appellate Court on an appeal of Zephyr and Koplin from the order of the trial court overruling their motion to dissolve the temporary injunction. The appeal was taken under section 78 of the Civil Practice Act. The

order denying the motion to dissolve the injunction was an interlocutory order, from which the right of appeal is allowed by that section. There was, therefore, no right of an appeal to this court from the judgment of the Appellate Court. Said section expressly so provides. Cummings-Landau, however, seeks to sustain the jurisdiction of this court on writ of error on the ground that a constitutional question is involved, which question first arose in the Appellate Court, under the rule announced by this court in several cases.

The rule is well settled that where a constitutional question first arises in the Appellate Court, this court has jurisdiction to review the judgment of the Appellate Court, on writ of error. This rule was not changed by the Practice Act. *Goodrich* v. *Sprague,* 376 Ill. 80; *Corcoran* v. *City of Chicago,* 373 Ill. 567; *Burket* v. *Reliance Bank & Trust Co.* 366 Ill. 98; *Spencer* v. *Chicago City Railway Co.* 366 Ill. 120.

A motion was made in this court to dismiss the writ of error on the ground that no constitutional question is involved, arising out of the judgment of the Appellate Court. The motion was taken with the case. We will first direct our attention to the disposition of that motion.

The constitutional question relied upon by plaintiff in error is its assertion that because the Appellate Court held the contract on which the suit was based invalid, it was thereby denied due process of law, in violation of section 2 of article II of the constitution, and section 1 of the fourteenth amendment to the Federal constitution. The argument is that the validity of the contract was not involved in the order overruling the motion to dissolve the injunction, that being the order from which the appeal was taken. It is further contended that the Appellate Court had no right to determine that question; that the Appellate Court having held the contract invalid, plaintiff in error was

foreclosed by that holding from thereafter litigating the validity of the contract on the trial of the case, on the merits, in the trial court.

If it is true, as contended, that the Appellate Court had no right to consider the validity of the contract and adjudicate that question on the appeal from the interlocutory order, the contention would have to be sustained under *Durkin* v. *Hey,* 376 Ill. 292, and *Walter Cabinet Co.* v. *Russell,* 250 Ill. 416. As already stated, the contention of plaintiff in error, on this jurisdictional question, is based upon its assertion that the Appellate Court, on the appeal from the interlocutory order denying the motion to dissolve the injunction, had no right or power to adjudicate the validity of the contract, or to determine whether the contract had been terminated. The determination of this question depends upon the issues which were presented to the Appellate Court by that appeal. If the validity of the contract and the question whether it had been terminated were issues in the trial court on the motion to dissolve the temporary injunction, then those issues were properly before the Appellate Court on the appeal, regardless of the fact that it was an appeal from an interlocutory order. If the Appellate Court, in adjudicating those issues, was acting within the scope of its authority in reviewing an interlocutory order, and within the scope of the issues presented by the record before it, then its decision did not deny to any party litigant the right to be heard. To state it differently, if those questions were raised by the motion to dissolve the injunction, plaintiff in error had the opportunity to be heard upon those issues, both in the trial court and in the Appellate Court. In this situation it has not been denied the right to be heard, and its constitutional rights were not invaded by the decision of the Appellate Court. In that case no constitutional question arose in the Appellate Court. Plaintiff in error was not denied due process of law, because it had had an opportunity for a hearing,

and it actually had a hearing on both of those questions, both in the trial court and in the Apellate Court.

The motion to dissolve the injunction, in paragraph 9, alleged specifically that the contract was contrary to public policy, and illegal and void under section 1 of the Sherman Anti-Trust Act, passed by Congress. (15 U. S. C. A. 1.) By paragraph 3 of the motion, it was alleged, also, that the contract had been terminated in accordance with the provisions thereof, by notice given by Zephyr. The answer of plaintiff in error to this motion, by paragraph 9, specifically denied that the contract was within the condemnation of section 1 of the Sherman Anti-Trust Act. By paragraph 5 of the answer, it was specifically denied that the contract was terminated, as set forth in paragraph 3 of the motion to dissolve.

As a result of these pleadings, the issues of whether the contract was invalid under section 1 of the Sherman Anti-Trust Act, and whether it had been terminated by notice given in the manner provided in the contract, were squarely raised and presented to the trial court by the motion to dissolve and the answer thereto. The appeal from the order entered upon the motion to dissolve and the answer thereto definitely presented those issues to the Appellate Court. The Appellate Court was compelled to decide both of those issues. It could not do otherwise. They had been raised by the parties in the court below and issue joined thereon. Plaintiff in error had an opportunity to be heard, both in the trial court and in the Appellate Court, on those issues. Clearly, there can be no contention that these questions were determined against plaintiff in error without giving it an opportunity to be heard. They were issues both in the trial court and in the Appellate Court. Plaintiff in error had an opportunity to be heard, and was heard, on those issues, in both courts.

In this state of the record, it can hardly be contended that the Appellate Court decided those issues without

affording to plaintiff in error an opportunity to be heard thereon. Plaintiff in error was not denied a hearing. By passing on those issues, which were issues in the case on the appeal, the judgment of the Appellate Court did not raise the constitutional question of the denial to plaintiff in error of the right to a hearing. In this situation, the jurisdiction of this court, on writ of error, cannot be sustained.

It was argued in the Appellate Court, in the petition for rehearing, and is argued here, that the Appellate Court having found the contract invalid, plaintiff in error, upon the trial of the case in the trial court, upon the merits, will be confronted with the proposition that the Appellate Court has held the contract invalid; that as a result its right to litigate the validity of the contract on the trial of the case, on the merits, has been denied. This is not true. The case was tried in the Appellate Court on the appeal from the interlocutory order denying the motion to dissolve the injunction, upon the issues raised by that motion and the answer thereto. The Appellate Court passed upon the record and the issues presented on that appeal. Upon that record it found the contract invalid, and for that reason ordered the injunction dissolved. In its opinion it carefully guarded against the situation which plaintiff in error anticipates, by inserting in the supplemental opinion the following language: "It is obvious that when the case is heard on its merits, both parties will be permitted to put in competent evidence tending to show that the contract is valid or invalid."

No evidence touching the validity or invalidity of the contract was heard on the motion to dissolve the injunction. It was made an issue by the allegations in the motion and the denial thereof in the answer. A report of the proceedings in the trial court was contained in the record on appeal. This report of proceedings shows that all the evidence offered on the hearing was a letter written by

Zephyr, purporting to terminate the contract, and Cummings-Landau's reply thereto. These letters were offered in evidence on the issue of whether the contract had been terminated. The Appellate Court was, therefore, compelled to determine the validity of the contract upon the face of the motion and the answer thereto, together with an examination of the contract itself, which was in the record, as a part of the complaint. It was compelled to determine the issue of whether the contract had been terminated by the letter offered in evidence, in support of this allegation in the motion. These issues were also raised by the complaint and the answer thereto. When the cause comes on for hearing in the superior court, on the merits, either side will have the right to offer any proof they may desire upon those issues. Upon such evidence, including an examination of the contract itself, the trial court will be at liberty to, and must, decide those issues. The decision of the issues by the Appellate Court, on the record before it, will not preclude the trial court from deciding the same issues on the record made in the hearing on the merits, no matter how they may have been decided by the Appellate Court on the record before it. The fears of plaintiff in error as to the influence the decision of the Appellate Court may have on the trial court, are not necessarily well founded. Of course, if the question of the validity of the contract should be presented to the trial court solely upon the record which was before the Appellate Court, it will be its duty to follow the decision of that court. Plaintiff in error having, by its answer to the complaint, joined issue on the allegation in the complaint as to the invalidity of the contract, it must be presumed that it will offer evidence on that issue on the trial on the merits.

The motion to dismiss the writ of error will have to be sustained in cause No. 27396. The record does not show that a constitutional question arose in the Appellate

Court. The decision of that court did not deny to plaintiff in error a hearing on any question which it decided.

This brings us to the consideration of cause No. 27422. The sole question presented by the appeal in this case is whether the order punishing Zephyr and Koplin, for contempt for a violation of the injunction, can be sustained after the order granting the injunction has been reversed. To state it differently, the question is, Does the vacation or reversal of an order granting an injunction abate all pending proceedings for contempt for a violation thereof. Many decisions of this court have been cited on both sides, pointing out the difference between cases involving criminal contempt and civil contempt. This distinction is not always easy to define. In many cases the elements of both may be present. In this class of cases proceedings to punish the offender may be well calculated to preserve the civil rights of the parties and the same acts may constitute contumacious conduct against the dignity of the court. This is particularly true in injunction cases. The question of whether contempt is civil or criminal has usually arisen in connection with the consideration of the proper method of review,—whether by appeal, as in civil cases, or by writ of error, as in criminal cases. None of the cases cited, however, throw much light on the question here involved. We are not convinced that this distinction, alone, is decisive here.

The Appellate Court held that when the order granting the injunction was reversed by it, the proceedings for contempt, then pending, for a violation of the injunction were abated. (*Cummings-Landau Laundry Machinery Co.* v. *Koplin,* 316 Ill. App. 306.) To sustain this decision, appellees contend that this case is one for civil contempt. It is argued that the injunction was issued solely to preserve the rights of the parties; that the proceeding for contempt was not for the protection of the orders and dignity of the court, but solely for the benefit of the parties. Upon

this premise it is contended that the proceeding for contempt did not survive the reversal of the order granting the injunction. This contention is based upon the case of *Eastman, Trustee,* v. *Dole,* 213 Ill. App. 364. That case was also cited and relied upon by the Appellate Court in its opinion. The facts in that case were materially different from the facts here involved. There, the person held in contempt had been ordered to pay over certain money in his hands to definite parties named in an order entered by the court. The court found him guilty of contempt in refusing to obey the order and adjudged that he pay a fine of $500, and that he stand committed to jail until he complied with the previous orders, by paying over the money as ordered. While an appeal was pending from the order imposing the punishment for contempt, the suit in which the original orders for the payment of the money were entered, was tried on the merits. On that hearing the trial court, by its final decree, found that the persons to whom the money was ordered paid, by its previous orders, were not entitled thereto. Those previous orders were vacated by the final decree. These facts were called to the attention of the Appellate Court by a motion to reverse the order imposing the punishment for contempt.

It is true that the Appellate Court, in the cited case, held, in substance, that the vacation of the order granting a temporary injunction abated all proceedings for contempt for a violation thereof. That decision is based upon a somewhat elaborate analysis of the distinction between civil and criminal contempt. While the decisions of this court cited in that case sustain the opinion as to this distinction, they do not sustain the conclusion which was reached. Few cases have been cited on the crucial question here involved.

The only cases cited by appellees on this question, other than *Eastman, Trustee,* v. *Dole,* are *O'Brien* v. *People ex rel. Kellogg Switchboard & Supply Co.* 216 Ill. 354, and *People* v. *Diedrich,* 141 Ill. 665. In the *O'Brien case*

the court first stated the universal rule that, in a proceeding for contempt, the order granting the injunction can only be attacked on jurisdictional grounds. What was said by the court pointing out the distinction between civil and criminal contempt was in answer to the contention that the defendants should have been discharged upon their sworn answer which, they contended, purged them of the alleged contempt. The court, after discussing the difference between civil and criminal contempt, held that the contempt proceedings, for the violation of the injunction, were not purely criminal in nature, and that the sworn answer did not entitle the defendants to discharge.

In the *Diedrich case* the suit was based on a contract, the provisions of which, in many respects, were similar to the contract involved in this case. In that case the defendant was enjoined from the manufacture and sale of a certain type of furnaces which was claimed to infringe upon the rights of the complainant. The defendant was found guilty of violating the injunction and sentenced to pay a fine. From the order imposing the punishment, he appealed to the Appellate Court. That court reversed the order of the trial court. Upon further appeal to this court, a motion was made to dismiss the appeal on the ground that the proceedings were criminal and that no appeal could be taken by the People from the judgment of the Appellate Court. What was said by the court there in pointing out the distinction between criminal and civil contempt, was said in passing on the motion to dismiss the appeal. Neither of those cases supports the contentions of appellees. They do sustain appellees' contention as to the distinction between civil and criminal contempt. They are not authority for the contention that proceedings for contempt for the violation of an injunction, issued for the protection of the rights of private litigants, abate upon the vacation or reversal of the order granting the injunction.

Our own investigation discloses that there are only a few cases on the subject. The only case in our own decisions, exactly in point, is *Crook* v. *People,* 16 Ill. 534. The identical question was there involved. A temporary injunction had been issued. While it was in force, a contempt proceeding was instituted in the same case for the violation of the injunction. That was a case exactly like this. The injunction was issued in aid of the rights of the parties to the suit. Under the decisions it was a case of civil contempt. The contempt proceedings were commenced and continued in the same proceedings, but entitled separately as The People against the parties alleged to be in contempt. The attachment was served and the parties entered into recognizance for their further appearance in the contempt proceedings. Before there was any hearing on the proceedings for contempt, the order granting the injunction was vacated. Thereafter, a hearing was had in the contempt proceedings and the penalties imposed. The order finding the defendants guilty of contempt was appealed to this court. It was there said: "The first objection we notice is, that no attachment for a contempt, by breach of an injunction, can issue, after the dissolution of the injunction. The case cited, *Moat* v. *Holbein,* 2 Edw. Ch. R. 188, does not lay down the rule in reference to issuing an alias attachment after dissolution. The party there had never been charged and proceeded against for the alleged contempt, during the continuance of the injunction. Here they had been under recognizance to answer. When the charge is made, it becomes a distinct proceeding on behalf of the people, and will not depend upon the continuance of the injunction. Although an application for an attachment originally, might be refused, after dissolution of the injunction, yet a pending accusation would not be dismissed." In conclusion, the court said: "When the attachment had been granted for the

breach, and a prosecution instituted to punish its authors, the bill might well be dismissed, and the complainant proceed at law to recover his damages, while he proceeded with the attachment for redress by fine for contempt. We do not think this proceeding was discontinued by dismissing the bill."

This case has been cited with approval in many subsequent decisions. It is the only case in our decisions, however, in which the question was directly presented and decided. In a note to *Canavan* v. *Canavan*, 18 N. M. 640, 139 Pac. 154, 51 L. R. A. (n. s.) 972, it is stated, quoting from *Smith* v. *Reno*, 6 How. Pr. 124, 1 Code Rep. (n. s.) 405, "So long as it (the injunction) remained an order of the court, so long he was bound to regard it. The fact that it has now been dissolved will furnish no protection to him for its violation, while it remained in force." The note there cites *Crook* v. *People*, 16 Ill. 534; *Weidner* v. *Friedman*, 126 Tenn. 677, 42 L. R. A. (n. s.) 1041, 151 S. W. 56.

In *Merrimack River Sav. Bank* v. *Clay Center*, 219 U. S. 527, 55 L. ed. 320, 31 S. Ct. 295, it was held that one who has been temporarily enjoined is not released from punishment for contempt, for the violation of the injunction, by affirmance of a decree dismissing the bill and discharging the injunction, even where the violation occurred after affirmance, but before the mandate was issued.

Appellees call our attention to the case of *Salvage Process Corp.* v. *Acme Tank Cleaning Process Corp.* 86 Fed (2d) 727. Great reliance is placed upon this case. In the main it supports appellees' contention. It is based largely, however, upon *Worden* v. *Searls*, 121 U. S. 14, 7 S. Ct. 814, 30 L. ed. 853. That case is not authority for the conclusion there reached. In that case the order granting a preliminary injunction was reversed, as unwarranted and improper. The cause was remanded with directions to dismiss the bill. In its opinion, however, the court said: "The final decree of the circuit court and the

orders of March 6, 1882, and October 9, 1882, are reversed, and the case is remanded to that court with directions to dismiss the bill, with costs, but without prejudice to the power and right of the circuit court to punish the contempt referred to in those orders by a proper proceeding. The preliminary injunction was in force until set aside." The orders of March 6 and October 9, 1882, were the orders imposing the penalties for contempt. That was clearly a case of civil contempt. The fines imposed were, by both orders, directed to be paid to the plaintiff, as damages.

Counsel for appellees have cited no other cases bearing upon the particular question here involved. The other cases cited relate to the distinction between civil and criminal contempt.

It is our conclusion that the contention of appellees can not be sustained. The decision of the Appellate Court in this case and the case of *Eastman, Trustee,* v. *Dole,* on which it is based, are out of harmony with many decisions of this court. The punishment in this case was inflicted for the violation of the injunctional order of the court. It has been held repeatedly, by this and other courts, that upon a hearing for the violation of an injunction, the only question open for consideration is whether the court had jurisdiction in any event to grant the injunction, regardless of the fact that it may have been erroneously granted. If the case belongs to the general class of cases of which the court has jurisdiction, then it has jurisdiction to grant an injunction, although its order in granting the same may have been erroneously entered. The question of whether the court rightfully or erroneously granted the injunction is not open to litigation on a citation for contempt. If the court has jurisdiction of the cause, an injunction granted in the exercise of such jurisdiction must be obeyed. The only issue in the contempt proceedings is whether the injunction has been violated. *Anderson and Lind Manf.*

*Co.* v. *Carpenters' Council,* 308 Ill. 488; *People* v. *Mc-Weeney,* 259 Ill. 161; *Flannery* v. *People,* 225 Ill. 62; *Christian Hospital* v. *People ex rel. Murphy,* 223 Ill. 244; *Leopold* v. *People,* 140 Ill. 552.

In *Lyon & Healy* v. *Piano Workers' Int'l Union,* 289 Ill. 176, it was said: "Jurisdiction is the power to hear and determine the matter in controversy between parties, and if the law gives the court power to render a judgment or decree then the court has jurisdiction. Jurisdiction does not depend upon the correctness of the decision and is not lost by an erroneous decision. Where a court has before it a party complainant asking that an injunction issue on a bill stating a case belonging to a class within the general equity jurisdiction of the court, and also the party against whom the injunction is asked, the court has jurisdiction to decide whether an injunction ought to issue and the character of the injunction, and should the court err in ordering an injunction to issue when one ought not to issue or in ordering an injunction broader in its terms than is justified by the bill its decree will be reversed, but the error will be no defense to an attachment for contempt for violating the injunction. The error does not deprive the court of its jurisdiction and the decree is binding upon the defendant until vacated or set aside. (*Franklin Union* v. *People,* 220 Ill. 355.) A party may refuse to obey an order where the court had no jurisdiction to make it, but not on the ground that it was erroneously made. An order made in the exercise of jurisdiction, though erroneous, must be obeyed until modified or set aside by the court making it or reversed by an appellate court. (*Court Rose Foresters of America* v. *Corna,* 279 Ill. 605; *Christian Hospital* v. *People,* 223 id. 244.) There can be no doubt that the circuit court of Cook county had jurisdiction of the subject matter and the parties. It had jurisdiction to determine whether the bill was sufficient to justify the issue of an injunction and the character of the injunction which

should issue. Whether the bill stated a cause of action for which an injunction should be granted, or whether the affidavits sufficiently establish the facts upon which an injunction should be granted, are questions of no importance upon the hearing of a charge of contempt for violating the injunction which the court ordered. If the bill was insufficient it should have been tested by a demurrer and not by disobedience of the writ. (*Court Rose Foresters of America* v. *Corna, supra.*) If its averments were not true a motion should have been made to dissolve the injunction, but until it was dissolved the appellants were bound to obey it. The sufficiency of the bill is not before us for determination. Neither is the question whether the scope of the injunction is broader than the allegations of the bill. Those questions can arise only on a direct proceeding for the review of the order granting the injunction."

The principle is of universal force that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous. This is the rule whether the contempt be technically defined as criminal or civil. On an appeal from an order committing a defendant for contempt for the violation of an order of the court, no error in such prior order can be considered. The only question as to such prior order that can be considered is whether the court had jurisdiction to make it. *Tolman* v. *Jones,* 114 Ill. 147.

In *People ex rel. Emmerson* v. *Lee,* 311 Ill. 552, the following language was used: "The circuit court had jurisdiction to grant the injunction, and the plaintiffs in error could not refuse to obey it even if it was erroneously granted, and in the proceeding against them for contempt the only issue involved was whether the injunction had been violated. *Tolman* v. *Jones,* 114 Ill. 147; *Leopold* v. *People,* 140 id. 552; *Christian Hospital* v. *People,* 223 id. 244; *Flannery* v. *People,* 225 id. 62; *People* v. *McWeeney,* 259 id. 161; *People* v. *Clark,* 268 id. 156; *Lyon & Healy*

v. *Piano Workers' International Union,* 289 id. 176; *Anderson & Lind Manf. Co.* v. *Carpenters' District Council,* 308 id. 488."

It would certainly be an innovation and establish a dangerous precedent to hold that the power of a court to punish for contempt for a violation of its injunctional, or other, orders, is dependent upon the affirmance of such orders by the highest court to which an appeal might be taken. If that were the rule, the powers of courts to preserve the *status quo* of litigation during the pendency thereof, would be entirely frustrated. It has always been the rule that courts of equity have power, upon a proper showing, to preserve the status of the parties, as well as the subject matter of the litigation until its final determination. Neither the court nor the parties in interest, as a condition to the exercise of such power, must guarantee the final result. The rule that, even though the court may erroneously grant an injunction, the writ must be obeyed, is too well settled to admit of doubt.

There is ample evidence in the record showing that the injunction had been flagrantly violated. The conduct of Zephyr and Koplin, shown by the record, demonstrates their utter disregard for the process of the court. Such acts constituted a clear violation of the injunction and a total disregard for the dignity of the court. Such acts cannot be tolerated by the courts.

In cause No. 27396, the writ of error is dismissed. In cause No. 27422, the judgment of the Appellate Court for the First District is reversed, and the order of the superior court of Cook county is affirmed.

> *Cause No. 27396, writ of error dismissed.*
> *Cause No. 27422, judgment of Appellate Court reversed; order of superior court affirmed.*