Town of Stow *vs.* Louis W. Marinelli & others.

Middlesex.   May 4, 1967. — June 14, 1967.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Municipal Corporations,* By-laws and ordinances, Highways. *Real Property,* Removal of soil. *Way,* Public: traffic regulations. *Motor Vehicle,* Traffic regulations. *Contempt. Equity Pleading and Practice,* Decree, Appeal, Contempt proceeding.

G. L. c. 40, § 21 (17), authorizing town by-laws prohibiting or regulating the removal of soil and other materials, does not confer on towns the power to regulate traffic as such; and a decision of the selectmen of a town denying a permit to remove sand and gravel from a parcel on the sole ground that such removal would generate traffic on a certain way which, within the town's by-law, would "impair the amenities of living in residences abutting" thereon and would be "contrary to the best interest" of the town was invalid where it appeared that the trucks used in such removal were canvas covered to prevent spillage and dust and that the decision was in effect a mere attempt to regulate traffic.   [742–743]

A final decree in a suit in equity is not vacated by a properly claimed appeal therefrom until the appeal is entered in this court.  [743]

An adjudication of contempt for disobedience of a decree in equity would survive a reversal of such decree so far as the adjudication was aimed at punishing the contemnor for a criminal contempt, but the adjudication, even though proper when made, would cease to be operative upon a reversal of such decree so far as the adjudication was intended to provide remedial relief against the contemnor for a civil contempt.  [744]

BILL IN EQUITY filed in the Superior Court on November 4, 1965.

The suit was heard by *Tomasello, J.*

A contempt proceeding was heard by *Ponte, J.*

*C. Thomas Zinni* for the defendants.

*Thomas R. Morse, Jr.,* Town Counsel, for the plaintiff.

SPALDING, J.   These are appeals from two decrees.   The first enjoined the individual defendants and the defendant Garden City Gravel Corporation (Garden) from removing earth materials from certain premises in Stow without a permit; it also ordered other related relief for the plaintiff. The second decree arose out of a petition for contempt, brought before another judge, alleging that the terms of the first decree had been violated.

## THE FIRST DECREE.

The evidence is reported and the judge made a report of the material facts.   Pertinent facts found by the judge and by us are as follows:  The defendants Louis Marinelli and Sonja Marinelli, husband and wife, are the owners of about thirty-six acres of land on the westerly side of White Pond Road in the town of Stow.   About the time they purchased the property, the Marinellis, through Garden, a family owned corporation of which Louis Marinelli was president and treasurer, commenced to remove sand and gravel from a pit on the premises.   Since April, 1963, 150,000 yards of sand and gravel were removed from the pit; there remained 1,000,000 yards of this material available for removal.   In the course of the excavations, the loam and topsoil were removed and placed in piles for respreading after the operation was completed.

The sand and gravel pit is located about 1,000 feet from White Pond Road, a lightly traveled road which is the sole means of egress from the Marinellis' land. It varies in width from fourteen to sixteen feet and is sufficiently wide for trucks to pass one another. There are no sidewalks. There are several houses on it, in some of which are young children. The road leads to Route 117, the main highway through Stow. The number of trips a day of trucks carrying sand and gravel from the Marinelli pit over White Pond Road varied from five to twenty-five. The trucks were covered with canvas which prevented spillage and dust. Other sand and gravel pits are operating in the vicinity of the Marinelli pit, but these have means of egress other than White Pond Road.

On March 1, 1965, the town of Stow adopted a by-law (effective March 18, 1965) pursuant to G. L. c. 40, § 21 (17), regulating the removal of earth materials. The pertinent parts of the by-law provide as follows: ''No permit for the removal of earth material shall be granted . . . unless the Board [of Selectmen] shall find that operations under such a permit . . . will not be contrary to the best interests of the Town. For this purpose, an operation shall be considered contrary to the best interest of the Town which: (1) will be injurious, dangerous to the public health or safety, constitute a nuisance, or (2) will produce noise, dust, or other effects, observable at the lot lines in amount objectionable or detrimental to the normal use of the adjacent property, or (3) will result in transportation of materials on ways giving access to the land in question which will cause traffic hazards or otherwise impair the amenities of living in residences abutting upon such way, or (4) will result in transportation which will cause undue injury to the roadway surfaces.''

Shortly after this by-law became effective the Marinellis, naming Garden and themselves as operators, applied to the selectmen of Stow for a permit to remove sand and gravel from their premises. A public hearing on the application was duly held by the selectmen on June 29, 1965. On Au-

gust 9, the selectmen rendered a decision. They found "that excavation of sand and gravel, and the loading of same, in and of itself, insofar as this may be done in the pit west of the brook, is not contrary to the best interests of the town as defined in [the by-law], (1) and (2). However the board was unable to agree that continued operations would not result in transportation of materials on ways giving access to the property which may impair the amenities of living in residences abutting on said ways. Consequently, the board was unable to find that continued operations would not be contrary to the best interests of the town." [1] The decision in substance directed the Marinellis and Garden to wind up the operations and to grade and restore the premises. This work was to be completed on or before October 11, 1965, at which time the temporary permit which had been issued for this purpose would terminate.

The Marinellis and Garden continued to remove sand and gravel after the temporary permit expired, and did not restore the premises as the permit directed. The town thereupon brought this bill in equity asking that the defendants be enjoined from conducting earth removal operations without a permit, that the town be authorized to enter upon the premises to restore them, and that the town be awarded damages for the cost of such restoration. The court's decree upheld the decision of the selectmen and granted the relief prayed for. [2] The defendants appealed.

The defendants contend that the Stow by-law under which the board of selectmen acted is unconstitutional in that it made no exception for earth removal operations which were in existence prior to its passage. But we need not consider

---

[1] The board's decision was confined to operations on the west side of a brook which runs through the Marinelli property. The judge's findings do not indicate whether any excavating was conducted on the east side of the brook. It appears from the record that none was conducted on that side. In any event, we do not consider it relevant to any question before us.

[2] In conjunction with the temporary permit which had been issued by the town, Garden as principal and Maryland Casualty Company (Maryland) as surety had executed a bond to ensure performance of certain provisions of the permit. The decree ordered Maryland to pay to the town of Stow the sum of $2,500. This portion of the decree has not been challenged.

that question, as we are of opinion that the board's decision was invalid for other reasons.

The board found nothing objectionable in the operations conducted on the Marinelli property; indeed, it specifically found that such operations were not contrary to the town's best interests. The only aspect of the Marinellis' operations which was found to be objectionable was the traffic created over White Pond Road. And since the Marinellis' trucks were covered by canvas which prevented spillage and dust, the objectionable quality of such traffic was not peculiar to earth removal operations but was rather the fact that there was a substantial use of the road by trucks. There is nothing to indicate that trucks of equal size would not create the same traffic difficulties, regardless of whether they were laden with sand and gravel or with anything else. In effect, then, Stow is attempting to enforce a traffic regulation aimed solely at sand and gravel trucking but with no apparent grounds for distinguishing between that and other types of truck traffic.

General Laws c. 40, § 21 (17), under which Stow enacted its by-law, enables towns to "make such orders and by-laws . . . as they may judge most conducive to their welfare . . . [f]or prohibiting or regulating the removal of soil, loam, sand or gravel . . . ." We have said that the purpose of this enabling statute "was to regulate the stripping of top soil so as to prevent the injurious effects brought about by the creation of waste areas." *Butler* v. *East Bridgewater,* 330 Mass. 33, 36. Undoubtedly there are other purposes which may properly be accomplished under this statute: for instance, the regulation of noise, dust, or other effects which are peculiarly related to earth removal operations and detrimental to the public welfare. See *Burlington* v. *Dunn,* 318 Mass. 216, 221.

But we are of opinion that the enabling statute is not so broad as to permit the regulation of traffic in the manner attempted here. The power of a town to regulate traffic is provided by G. L. c. 40, § 22. See *M & M Trans. Co.* v. *Wellesley,* 333 Mass. 11. General Laws c. 40, § 21 (17),

does not confer upon towns an additional power to regulate traffic.

The board's decision denying the Marinellis and Garden a permit and ordering them to restore their premises was invalid. The final decree, which was based on the validity of that decision, cannot stand. The entry must be: Decree reversed.

*So ordered.*

### The Second Decree.

The first decree was entered on February 11, 1966. The defendants claimed an appeal on February 16. Thereafter, but before the appeal had been entered in this court, the defendants continued with their earth removal operations. This is not disputed. While these operations were being carried on the town brought this petition for contempt. The defendants sought to justify their conduct on the ground that the taking of the appeal had the effect of vacating the decree. The judge ruled that it did not, and entered a decree adjudging Louis Marinelli in contempt of the decree of February 11. He was sentenced to a term of six months in jail. The execution of the sentence was stayed for one year, the court reserving "the right to impose said sentence in the event of any further contempt of the . . . [February 11] [d]ecree." Garden was also adjudged in contempt but the judge "continue[d] this matter for sentence for one year." The petition was dismissed as to the defendant Sonja Marinelli. Marinelli and Garden appealed. See *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 348; *Commonwealth* v. *McHugh,* 326 Mass. 249, 275; *Crystal, petitioner,* 330 Mass. 583, 591.

The judge rightly ruled that the taking of the appeal did not stay the decree. "The final decree becomes effective as soon as entered. The final decree is vacated . . . and proceedings under it are stayed . . . only upon the conjunction of two things, (a) an appeal therefrom seasonably claimed by one having a right to appeal . . . and (b) the entry of that appeal in this court." *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 189. When the acts which gave rise to the contempt petition occurred an appeal had been claimed

but it had not been entered in this court. The decree, there-fore, was in full force and effect and the conduct of Marinelli and Garden was a palpable violation of it. If Marinelli and Garden desired to be relieved from the effects of the decree pending the appeal, a remedy was open to them. As was pointed out in the *Loeb* case, *supra,* at pages 189–190, "As soon as an appeal has been claimed, and before the final decree is vacated by entry of the appeal in this court, a statutory power arises in the court that entered the decree and also in this court, to grant any needed injunction and to make any other proper interlocutory order pending the appeal. G. L. . . . c. 214, §§ 21, 22." Thus they could have applied for a stay pending the appeal. Instead of availing themselves of this remedy, they went ahead and flouted the decree. They were rightly adjudged in contempt. See *Wireless Specialty Apparatus Co.* v. *Priess,* 246 Mass. 274, 277.

The decree adjudging Louis Marinelli and Garden to be in contempt was thus proper when issued. The further question now arises, however, as to the effect upon that decree of our reversal of the first decree.

We find no precedent in our cases on this point. But numerous other jurisdictions have considered the effect of a reversal of a decree in equity upon a judgment of contempt for disobedience of the erroneous decree. See annotation, 148 A. L. R. 1024; annotation, 12 A. L. R. 2d 1059, 1107–1116. Two principles are supported both by the weight of authority and by reason. The first is that contempt decrees, or those parts of such decrees, which are aimed at vindicating the authority and dignity of the court and punishing the contemnor for an affront to it, that is, criminal contempts, will survive the reversal of the decree which was disobeyed. E.g. *United States* v. *United Mine Wkrs. of America,* 330 U. S. 258, 293–294, and cases cited. Annotation, 148 A. L. R. 1024, 1033–1035. But the rule is otherwise with respect to civil contempts. A plaintiff may not profit from remedial relief obtained against a contemnor after it is decided, by appellate reversal, that the plaintiff was not originally entitled to any equitable relief. E.g.

*Salvage Process Corp.* v. *Acme Tank Cleaning Process Corp.* 86 F. 2d 727 (2d Cir.). See *United States* v. *United Mine Wkrs. of America, supra,* 294–295; annotation, 148 A. L. R. 1024, 1032–1033. But see *Cummings-Landau Laundry-Mach. Co.* v. *Koplin,* 386 Ill. 368. The reason for this second principle was stated as follows in the *Salvage Process Corp.* case, *supra:* ''It is true that the reversal of the decree does not retroactively obliterate the past existence of the violation; yet on the other hand it does more than destroy the future sanction of the decree. It adjudges that it never should have passed; that the right which it affected to create was no right at all. To let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong, which the law should not do.''

It has been recognized that a sentence for contempt may be ''partly remedial and partly punitive, partaking both of civil and criminal features.'' *Root* v. *MacDonald,* 260 Mass. 344, 363–365.[1] It cannot be said with assurance that the adjudication for contempt here was either wholly remedial or wholly punitive. Conceivably it might have had both features. Applying the principles set forth above, no further action should be taken under the contempt decree for the purpose of furnishing the town of Stow remedial relief arising out of the defendants' disobedience of the first decree. For such remedial purposes, the contempt decree shall no longer be operative. But to the extent that the decree has a criminal aspect, because of an affront to the law, the court is still empowered to take such action as it deems appropriate to vindicate its authority. We cannot be sure, however, that the judge would have made precisely the same disposition had it then been known that the original decree was invalid and that no civil contempt could be considered. Accordingly the contempt decree is reversed to enable the judge to consider further the matter of disposition in conformity with this opinion.

*So ordered.*

---

[1] For a collection of cases on the distinction between civil and criminal contempts, see footnote in *Commonwealth* v. *Hudson,* 315 Mass. 335, 346.