McHugh, J.
This is an action for contempt in which plaintiff, U.S. Trust, seeks to hold the “reach and apply” defendant, Town of Wilmington (“the Town”), in contempt of Court for failing to honor the terms of an injunction this Court issued to prohibit the Town from paying certain sums of money it owed to one of the individual defendants. In response, the Town has fired a broadside of defenses that will be discussed, seria-tim, in a few moments.
The case was submitted to the Court for trial on a stipulation of agreed facts as “case stated.” See generally Frati v. Jannini, 226 Mass. 430, 431 (1917). Based on the parties’ stipulation, the exhibits introduced at the hearing,[1] and the reasonable inferences I have drawn from those sources, I make the findings, conclusions and orders that follow.
FINDINGS OF FACT
The plaintiff, U.S. Trust (“the Bank”), is a banking corporation with a principal place of business at 331 Montvale Avenue in Woburn, Massachusetts. The Town of Wilmington, of course, is a municipality incorporated in the Commonwealth of Massachusetts.
At some time before this action began, the Bank loaned American Traveler, Inc., William D. Connell, Barbara A. Connell, Francis M. Fay and William J. Fay, Jr., or several of them, more than $600,000.00 in connection with a commercial venture. The defendants failed to repay the loaned amounts in timely fashion. As a result, on August 12, 1992, the Bank commenced this action to recover the alleged debt.
Initially, the Town was not a party to the action. On December 22, 1992, however, the Bank filed an amended verified complaint adding the Town as a party and asserting a “reach and apply” claim against it. In its “reach and apply” claim, the Bank sought to reach and apply certain sums the Town owed defendant William Fay, the former Superintendent of Schools whose contract the Town had terminated. On December 22, when the Bank filed its “reach and apply” claim, the Town in fact owed Mr. Fay, unconditionally, the sum of $14,530.91 — $8,938.96 of which was for unused vacation.[2]
On December 22, pursuant to the Bank’s motion, this Court entered a temporary restraining order against the Town and against Mr. & Mrs. Fay. Insofar as it affected the Town, the restraining order commanded the Town and its
agents, attorneys and counsels, and each and every one of them, to desist and refrain from paying any monies or transferring, assigning or delivering any property or assets, directly or indirectly, to William Fay, his agents, employees, attorneys or other representatives or to any other person on his behalf.
*311 A summons and copy of the restraining order were delivered at 2:40 p.m. on December 23rd to Peggy Taratino, the administrative assistant to the Town manager. In fact and in practice, when process servers appeared at the Town’s offices with process for the Town, they were usually directed to the office of the Town manager where an employee, frequently Ms. Taratino herself, accepted service on the Town’s behalf.
In any event, at 11:36 a.m. on December 23, 1992, some three hours before service of process was made, the Town had sent to Mr. Fay, via the U.S. Post Office express mail service, a check for the entire $14,530.91 the Town owed him. At the time that check was deposited in the mail, the Town had no knowledge of this action or of the temporary restraining order this Court had issued the prior day. The check had been drawn and dispersed in the usual course of business by the Town treasurer and was not drawn, prepared or sent in an effort to defeat, evade or otherwise circumvent the order this Court had issued.
Mr. Fay received the Town’s check and, at some point thereafter, took steps to collect it. Some days later, the amount of the check was debited against the Town’s account at the Boston Safe Deposit and Trust Company. The check the Town sent Mr. Fay was an ordinary draft and was not a certified check or other instrument evidencing a primary obligation of the Town’s bank.[3] Between the time the Town employee deposited Mr. Fay’s check in the mail at 11:32 a.m. on December 23 and the time the Town’s account was debited for the amount of the check, the Town made no effort whatsoever to stop payment on the check or otherwise to inform the drawee bank that it should not honor the check when it was presented for payment.[4]
Although the record presently before me is not detailed enough to allow me to conclude precisely when the Town’s account was debited for the amount of the Fay check,[5] I infer, and therefor find, that the process of negotiating the check was completed no earlier than the close of business on December 29, 1992. I therefore find that, had the Town acted promptly after receipt of the temporary restraining order, it could have delivered to its bank a “stop payment” order before the Fay check was presented to that bank for payment.
CONCLUSIONS OF LAW
Two questions are presented by the foregoing factual findings. The first is whether the Town acted contemptuously by its acts or omissions following service of the temporary restraining order. If the answer to that question is yes, then the second question concerns the nature of the remedy to which the Bank is entitled as a consequence.
1. Liability
Dealing first with question 1, a finding of contempt requires “a clear and undoubted disobedience of a clear and unequivocal command.” United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 36 (1972). Accord, Building Inspector of Peabody v. Northeast Nursery, Inc., 418 Mass. 401, 406 (1994). While no decided Massachusetts cases are precisely on point, I am of the opinion that the Town did act contemptuously by failing to stop payment on the check once it received notice of the injunction.
The injunction issued by the court in this case surely was a clear and unequivocal command. As stated, the injunction commanded the
Town . . . and [its] agents, attorneys and counselors, and each and every one of them to desist and refrain from paying any monies or transferring or assigning or delivering any properly or assets, directly or indirectly, to William Fay.
At the time the Town received actual notice of the injunction at 2:42 p.m. on December 23,[6] the funds the check represented remained subject to the Town’s direction and control. A check does not in and of itself operate as an assignment of any funds in the hands of the drawee bank. Until its bank honored the check, therefore, the Town retained the right to control the funds the check represented and to order the bank not to honor the check it had issued to Fay. G.L.c. 106, §§4-403(1), 4-303.
From the foregoing, it follows that the Town’s election to do nothing following receipt of the injunction with respect to the check it had issued was, through inaction, participation in a transfer of the Town’s funds to Fay and a violation of that part of the injunction that commanded the Town to refrain from “paying any monies or . . . delivering any property or assets, directly or indirectly” to Fay. At least where an organization is concerned, proof of intent to violate the injunction or proof of purposeful steps designed to thwart the injunction’s terms are not necessary predicates for a finding of contempt. Instead “(i]t is enough to establish that persons acting for the [Town] were responsible for action or inaction which in fact constituted a violation.” United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 37 (1972). The Town’s failure to stop payment of the check was, as a consequence, contemptuous. Conde v. Anton Adjustment Co., Inc., 133 Misc.2d 998, 1000, 508 N.Y.S. 2d 884, 885 (N.Y. Sup. 1986).
2. Remedy
The second question concerns the remedy that should be applied in proceedings for civil contempt like this one. The appropriate remedy must be compensatory or coercive or both and cannot be simply punitive. Furtado v. Furtado, 380 Mass. 137, 141 (1980). The first remedial question to be faced, therefore, is whether and to what extent the Town’s contemptuous action resulted in harm to the Bank. The Town argues that the injunction was issued improperly and that, as a consequence, the Bank suffered no damage from *312 its violation and should be awarded nothing by way of remedy for contempt.
The injunction here relevant issued in response to the Bank’s action to reach and apply the assets of Fay in the Town’s hands. But an action to reach and apply is an equitable action that may not be used to reach assets that can be reached through an action at law, i.e., through trustee process. Venable v. Rickenburg, 152 Mass. 64, 66 (1890).[7] Money, unconditionally due and owing by a debtor to a creditor, may be attached by trustee process. G.L.c. 246, §24. Absent some other bar, therefore, debts unconditionally due and owing may be attached on trustee process, whether those debts were created through personal services or otherwise. They thus are not amenable to seizure by way of an action to reach and apply. Hooker v. McLennen, 236 Mass. 117, 119-21 (1920).
There is no doubt that the sums the Town paid Mr. Fay on December 22nd were unconditionally due and owing at the time process was served. Of the total of $14,530.91 the Town paid him, however, $8,938.96 was for unpaid vacation pay. Under G.L.c. 246, §32(8) wages for personal labor may be attached on trustee process only if certain conditions are met. The record here does not show that they were.[8] “Wages” include “any holiday or vacation payments due under an oral or written agreement.” G.L.c.149, §148; Commonwealth v. Morash, 402 Mass. 287, 288 (1988).[9]
While there are no decided cases precisely on point, I am of the opinion that special legislative concern for protecting wages evinced by G.L.c. 246, §32(a) and c. 149, §148 means that the statutory unavailability of trustee process cannot be circumvented by use of an action to reach and apply.[10] Any other conclusion would mean that the Legislature’s careful handiwork could easily be undone simply by changing the caption on the paper the moving party filed. Construction of a statute, or set of statutes, that effectively eviscerates the statutory plan should be avoided unless no alternatives are possible. Paquin v. Board of Appeals of Barnstable, 27 Mass.App.Ct. 577, 580 (1989).
In the last analysis, then, an action to reach and apply was not the proper vehicle to use in order to attach the monies the Bank sought to attach. Insofar as the $5,681.95 the Town owed Mr. Fay for sick days, disability and longevity is concerned, an action to reach and apply was unavailable because the sums could have been attached on trustee process. Insofar as the Town’s remaining debt of $8,938.96 to Mr. Fay is concerned, an action to reach and apply was unavailable because the Town’s debt was for “wages” it owed Mr. Fay. Those “wages” could not be attached, through trustee process or through an action to reach and apply, under the circumstances existing at the time the Bank filed this action.
It does not follow, though, that the Bank suffered no harm as a consequence of the Town’s contempt. Even an improperly-issued injunction must be obeyed until the injunction is altered or vacated by subsequent judicial order. See Town of Stow v. Marinelli, 352 Mass. 738, 743-44(1967). But the temporary restraining order in this case was not improperly issued. Like all temporary orders, it resulted from a forecast about the litigation’s likely course and was designed to give the Bank protection against dissipation of assets that, on the record as it then stood, it appeared likely that the Bank ultimately would be able to reach and apply. That the forecast turned out to be inaccurate does not retroactively invalidate action properly taken on the basis of the forecast itself.[11]
To be sure, both Fay and the Town had the right to move for dissolution of the temporary restraining order and of the subsequent preliminary injunction. Applicable rules, however, required them to give notice of their motion; Mass.R.Civ.P. 6(c); Superior Court Rule 9A(b); and to disclose in the motion itself the grounds on which they moved. Mass.R.Civ.P. 7(b)(1). Logic fully suggests that the Bank, once apprised of the Town’s claim that a bill to reach and apply was improper because at least some of the funds were attachable on a trustee writ, would have sought issuance of a trustee writ at the time the motion to dissolve the injunction was heard. Nothing in this record suggests that the motion for trustee process would not have been allowed. Had it been allowed, it would have captured $5,681.95 of the funds the check represented. To that extent, therefore, the Bank was damaged by the Town’s contemptuous conduct and should recover that amount from the Town.
In addition, the Bank is entitled to recover reasonable attorneys fees generated by its pursuit of this action. Manchester v. Department of Environmental Quality Engineering, 381 Mass. 208, 215-16 (1980). Appropriate fees are to be determined in accordance with the lodestar principles set forth in Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993), as well as the principles expressed in the earlier cases of Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979) and Heller v. Silverbranch Construction Corp., 376 Mass.621, 629 (1978).
ORDER
In light of the foregoing, it is hereby ordered that judgment enter as follows:
1. Declaring that the Town of Wilmington’s failure to stop payment of check no. 19882 payable to the order of William J. Fay, Jr., or otherwise to withhold or restrain transfer of funds from the Town of Wilmington’s account with the Boston Safe Deposit & Trust Co. to William J. Fay, Jr., was in contempt of the order of this court entered in this action on December 22, 1992.
2. The Town of Wilmington shall pay to USTRUST, plaintiff in this action, the sum of $5,591.95 plus interest at the judgment rate from December 23, 1992 to compensate the Bank for the damage caused by the Town’s contempt.
*313 3. Counsel for the Bank shall serve and file an affidavit setting out the attorneys fees to which they claim entitlement together with such support for those fees as is appropriate.

At the hearing, the deposition of Michael Morris was marked as Exhibit A for identification. The deposition was offered by the plaintiff and counsel for the Town later informed the clerk that he had no objection to the Court’s consideration of it. I therefore have taken its content into account in the findings and conclusions that follow.

The total amount the Town owed Mr. Fay was derived as follows:
1. Twenty-nine vacation days at $308.24 per day: $8,938.96
2. Ninety-eight sick days at $25.00 per day: $2,540.00
3. Reimbursement for disability: $2,141.95
4. Longevity (twenty years of service): $1,000.00

The temporary restraining order the Court issued on December 22 was the subject of a motion for a preliminary injunction heard on December 29, 1992. The Town elected not to appear at that hearing. A preliminary issued in due course extending the temporary restraining order issued at the conclusion of the hearing.

At the time the temporary restraining order issued with respect to the Town, a temporary restraining order issued against Mr. and Mrs. Fay restraining them from receiving or disposing of any debt payment the Town made. A similar preliminary injunction issued against them on December 29. On or about June 15, 1993, Mr. and Mrs. Fay filed a petition for bankruptcy in the United States Bankruptcy Court. On or about June 21, 1993, they filed a suggestion of bankruptcy in this action and, insofar as they are concerned, the action has been stayed ever since.

The record contains both the front and back of the check with endorsements and processing stamps. It appears from these stamps that the check was deposited in a bank other than the drawee bank on December 28, 1992 and that it was in the collection process on December 29, 1992'when various date stamps were placed on it.

The Town contends, among other things, that it was not properly served with the temporary restraining order and thus cannot be held in contempt of it under any circumstances. To reach that conclusion, the Town first asserts that service is effected by delivering of a copy of the summons and the complaint to an appropriate person. Mass.R.Civ.P. 4(d). In this case, however, the return recites delivery only of the summons and temporary restraining order, not the complaint. Second, Mass.R.Civ.P. 4(d)(4) states that service upon a town is made by delivering a copy of the summons and complaint to the treasurer or clerk or to the offices of the treasurer or clerk. Here, I have found that the Town, generally and in this case, directed process servers to the office of the Town Manager. An employee of the Town manager’s office actually accepted service in this case. Even if there were defects in service of process, however, the Town’s argument that it cannot be held in contempt founders on two separate shoals. First, any defect in service of process is waived unless the defect is asserted in a motion or in a responsive pleading. Mass.R.Civ.P. 12(h)(1). The Town’s answer to the complaint said nothing about any alleged deficiencies in service of process. Not until the complaint for contempt was filed did the Town raise any question about the precision with which service had been effected. The Town thus waived any service defects. Second, the Town rightly does not contend that service of the summons and restraining order, even if deficient, failed to give to the Town actual notice of the injunction’s content. Instead, the Town, purporting to rely on Heyman v. Klein, 444 F.2d 65 (2d Cir. 1971), argues that “[a] court does not have power to issue an order against a person who is not aparty and has not been properly served.” Town’s Brief at 6 (emphasis added). The decision in Heyman did in fact focus on a person who was not a party and who had not been served with the order in question. Here, however, the Town was a party, for one becomes a “party” when named in a filed complaint, not when served with process. M&A Electric Power Cooperative v. True, 480 S.W.2d 311, 314 (Mo. App. 1972). No case of which this Court is aware and no case the Town has cited stands for the proposition that a party to an action who has actual notice of a properly-issued injunction running directly against that party is entitled to ignore the injunction’s terms because of a technical deficiency in the manner in which service of process is effected. Indeed, any such holding would confer on parties broader immunity from the binding force of an injunction than the plain and unequivocal terms of Mass.R.Civ.P. Rule 65(d) impose on certain nonparties with actual notice. See generally, e.g., Reich v. Sea Sprite Boat Company, 50 F.3d 413, 416-17 (7th Cir. 1995).

The merger of law and equity does not affect the circumstances under which a trustee writ or a bill to reach and apply may issue because both are creatures of statutes currently in force.

The conditions, three in number, are that (1) the action be an action on a judgment, (2) the wages must not be exempt from attachment by virtue of G.L.c. 234, §5 and (3) the trustee writ be accompanied by a special endorsement. This action is not an action on a judgment and thus there is no occasion to consider whether, at least in substance, the other two conditions were met.

To be sure, the statutory definition of “wages” is derived from G.L.c. 149, §148, a statute with a focus different from the focus contained in G.L.c. 246, §32(a). Statutes are to be construed, however, harmoniously when an harmonious construction advances the manifest statutory purposes. See Town of Hadley v. Town of Amherst, ZT2 Mass. 46, 51 (1977). Both G.L.c. 246, §32(a) and c. 149, §148 are designed to protect the fruits of one’s own personal labors. Therefore, although the statutes follow different routes to that goal, there is no sound reason why they should be construed in a different fashion.

No one has questioned the Town’s standing to seek shelter beneath a statutory umbrella clearly designed to protect a person in the position of Mr. Fay, not the Town. Had Mr. Fay appeared and answered, of course, he could have waived the claim now asserted by the Bank that the debt was not amenable to an equitable attachment. See Leffler v. Todd, 316 Mass. 227, 233 (1941). In any event, because the standing question has not been raised, I need not decide whether, if the Town’s standing had been questioned, the Town would have been permitted to assert the rights and make the claims it now makes.

 Nhat is the essential distinction between this case and Town of Stow v. Marinetti, 352 Mass. 738 (1967), on which the Town relies for the proposition that a finding of contempt is improper if the underlying injunction is vacated. The actual proposition for which Marinetti stands is that “[a] plaintiff may not profit from remedial relief obtained against a contemnor after it is decided, by appellate reversal, that the plaintiff was not originally entitled to any equitable relief.” Id. at 744. Marinetti involved contempt of a final decree ultimately reversed on appeal. That reversal, in turn, amounted to a judgment that the decree should not have entered in the first place. Here, the finding I have made that equitable process was unavailable to reach and apply the money the Town owed to Fay does suggest or imply that the temporary restraining order should not have issued. It simply means that the temporary restraining order and subsequent preliminary injunction would never have ripened into orders requiring the Town to transfer money to the Bank.