MEYER FINKELSTEIN vs. BOARD OF REGISTRATION
IN OPTOMETRY.

Suffolk.     March 3, 1976. — June 11, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Optometry. Optician. Regulation. Words,* "Practice of optometry,"
"Advertising."

Rule 6(f) of the rules of the Board of Registration in Optometry,
which prohibited an optometrist from "[a]dvertising or holding him-
self forth, in any manner, as an optician . . . while actively engaged
in the practice of optometry" could not be reasonably interpreted as
foreclosing an optometrist from pursuing a distinct practice as a
dispensing optician. [478-479]

It was beyond the power of the Board of Registration in Optometry
under G. L. c. 112, § 67, to promulgate a rule which would bar an
optometrist from working as a dispensing optician. [479-481]

BILL IN EQUITY filed in the Superior Court on February
25, 1972.

The case was heard by *Mason, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Melvin S. Louison* for the plaintiff.

*Howard Whitehead,* Assistant Attorney General, for the
Board of Registration in Optometry.

*Terrance J. Hamilton & Bruce A. Singal,* for Con-
sumers' Council, amicus curiae, submitted a brief.

REARDON, J.     The plaintiff has appealed from a judg-
ment affirming a decision of the Board of Registration in
Optometry (board), which suspended his license as a prac-
ticing optometrist.

There is no dispute on the facts which appear to be as
follows. During weekdays, with the exception of one day

off, the plaintiff engaged in practice as a registered optometrist between the hours of 9 A.M. and 5 P.M. in an office located in Brockton.[1] Between the hours of 6 and 10 P.M. daily he engaged in the business of a licensed dispensing optician at Berk's department store in Raynham where he was the proprietor of an optical shop. As an optometrist he examined eyes and, where necessary, wrote prescriptions respecting his findings. In his capacity as an optician he fitted customers with frames and lenses based on the customers' prescriptions but he conducted no eye examinations. The ground for his suspension was the violation of rule 6 (f) of the rules of the board, which provides as follows: "Without limiting the right of this Board to determine what forms of advertising on the part of an optometrist constitute unprofessional conduct, the following forms of advertising are unprofessional and therefore prohibited: . . . (f) Advertising or holding himself forth, in any manner, as an optician or hearing aid specialist while actively engaged in the practice of optometry." After a hearing the board made conclusions of law which included the following interpretation of rule 6 (f): "The Board concludes that an optometrist may in the course of his optometry practice, adapt and fit frames and lenses and fill prescriptions; that these services are incidental and necessary to the practice of optometry. However, the Board finds that rule 6 (f) prohibits a licensed practicing optometrist from setting up, establishing, or working at the separate business of a dispensing optician." The board then found the plaintiff in violation of rule 6 (f) and suspended his license until such time as he ceased to operate the business of a dispensing optician.

A Superior Court judge ruled that the board's interpretation of rule 6 (f) outlined above was a reasonable one

---

[1] The board found that the plaintiff conducted his optometrical practice in Brockton. Counsel for the plaintiff represented on oral argument that this optometrical practice was actually conducted in Taunton. The result in this case does not turn on which of these two cities was the locus of the plaintiff's practice of optometry.

and that as so interpreted it was within the board's power to promulgate it. On this basis he affirmed the board's decision. For the reasons stated below we reverse the judgment.

First, there is serious doubt whether the plaintiff has transgressed any board rule as presently written. Ordinarily an agency's interpretation of its own rule is entitled to great weight. *Udall* v. *Tallman*, 380 U.S. 1, 16 (1965). *Bowles* v. *Seminole Rock & Sand Co.*, 325 U.S. 410, 413-414 (1945). *Budd Co.* v. *Occupational Safety & Health Review Comm'n*, 513 F.2d 201, 204-205 (3d Cir. 1975). Cf. *Rockland Mut. Ins. Co.* v. *Commissioner of Ins.*, 360 Mass. 667, 674-675 (1971); *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343-344 (1964). However, this principle is one of deference, not abdication, and courts will not hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself. See *Detroit Edison Co.* v. *United States Environmental Protection Agency*, 496 F.2d 244, 248-249 (6th Cir. 1974); *Pike* v. *Civil Aeronautics Bd.*, 303 F.2d 353, 357 (8th Cir. 1962); *Equal Employment Opportunity Comm'n* v. *Westvaco Corp.*, 372 F. Supp. 985, 993-994 (D. Md. 1974). Cf. *Brennan* v. *Occupational Safety & Health Review Comm'n*, 491 F.2d 1340, 1344-1345 (2d Cir. 1974). The board has been granted rule making authority under G. L. c. 112, § 67, but once having exercised this power it cannot thereafter arbitrarily construe and apply its rules which as promulgated have dimensions and content not subject to infinite manipulation and expansion. To hold otherwise would be to permit the board, when seeking to amend or add to its rules, to substitute aggressive interpretation for the rule making procedure provided by the Legislature in G. L. c. 30A.

Rule 6 ostensibly regulates advertising on the part of optometrists. "Advertising" is defined in board rule 5 as consisting of "the use of the newspaper, magazines or other publications, books, notice, circular, pamphlet, letter, hand-bill, poster, sign, radio or television broadcasting, or

any other means or method now or hereafter employed to bring to the attention of the public the practice of optometry or any conduct or act of an optometrist relative to the practice of optometry." There is no indication in this record that the plaintiff "advertised" as the term is defined in rule 5, or in any other usual sense of the word, in connection with his practice of optometry. The board found no such advertising violation by the plaintiff but simply determined that the plaintiff, as a licensed optometrist, was foreclosed from pursuing a distinct practice as a dispensing optician. If the board wished to prohibit practicing optometrists from working as dispensing opticians, it could have used language better designed to make its intention clear than that of rule 6 (f). It would appear that the board in this case has given a strained interpretation to rule 6 (f) and that the plaintiff's activities cannot be included fairly within its prohibitions.

In any event, even if we were to agree that the board under the rubric of rule 6 (f) has prohibited practicing optometrists from also working as dispensing opticians, we would conclude that the rule, as so interpreted, is beyond the power of the board to promulgate. General Laws c. 112, § 67, inserted by St. 1934, c. 339, § 2, authorizes the board to make "rules and regulations governing ... *the practice of optometry*" (emphasis supplied). There is nothing alleged to be improper in the plaintiff's optometrical practice. With respect to that practice, there appear to be no grounds for challenging his technical competence, his treatment of patients, his advertising policy, or any other aspect of his professional conduct as violative of any statute or board rule. Nor is it alleged that the plaintiff or anyone else was practicing optometry in his optical shop in Raynham. It does not appear that he advertised the optical shop as providing optometrical services or that he used the title of "doctor" or "optometrist" in connection with that business. There is no evidence that the plaintiff used his optical shop to funnel customers to himself as an optometrist or as a way to advertise his optometrical prac-

tice.[2] In his business as a dispensing optician, an occupation for which he is separately licensed under G. L. c. 112, § 73D, the plaintiff's activities seem proper. The board in any event lacks the authority to regulate the activities of opticians. *Kelley* v. *Board of Registration in Optometry*, 351 Mass. 187, 192 (1966).

*Silverman* v. *Board of Registration in Optometry*, 344 Mass. 129 (1962), does not support the board's position. In that case this court upheld a board regulation prohibiting optometrists from maintaining a practice in commercial or mercantile establishments. However, that case dealt with an optometrist who wished to conduct an *optometrical practice* on the premises of a commercial establishment. As we have stated above, the plaintiff in this case was not practicing optometry in the department store but was carefully limiting himself to the business of an optician. The term "practice of optometry" as used in G. L. c. 112, § 67, is not to be so expansively interpreted as to embrace any and all activities of an optometrist no matter where performed or what skills involved. In the *Silverman* case we did state that "[t]he board could conclude that the *presence of an optometrist* in a commercial establishment of the sort operated by Gem would create the same evil as would advertising, i.e., mercantile practices resulting in lowered professional standards" (emphasis supplied). *Id.* at 134. We think that the italicized phrase should be interpreted as "the presence of an optometrist, practicing his profession of optometry," and that this language in the *Silverman* case does not embrace the plain-

---

[2] The board did find that the plaintiff, in the course of his business as an optician, filled some prescriptions he had written himself as an optometrist. However, there was no finding that this constituted a regular practice, nor did the board base its decision to suspend the plaintiff's license on any finding to the effect that he was using his optometrical practice as a conduit for customers for his optical shop. Without passing on the legitimacy of such a practice had it been shown to exist, we simply note that the board's decision to suspend the plaintiff's license appears to be grounded candidly and solely on the fact that the plaintiff, in addition to his optometrical practice, maintained a separate business as an optician.

tiff's working as an optician in the circumstances of this case.

It seems that the board disapproves of members of the profession of optometry "moonlighting" in second jobs as opticians. It argues that to permit this practice would "degrade the profession" of optometry. We do not discern the elements of this degradation, at least in any sense relevant to the protection of the public health and welfare which is the object of proper regulation of the practice of optometry. See *Massachusetts Soc'y of Optometrists* v. *Waddick*, 340 Mass. 581, 584 (1960). Nor do we comprehend the authority vested in the board to make rules governing the practice of optometry provided for in G. L. c. 112, § 67, as placing the board in a position to prohibit the practice of a dispensing optician to one duly licensed under G. L. c. 112, § 73D, which deals with such practice. Absent a showing that the plaintiff's working as a dispensing optician had infected his practice of optometry in some fashion, not made out here, we conclude that the board was without authority to suspend the plaintiff's license to practice optometry merely because he also maintained a separate practice as an optician.

It follows that the judgment of the Superior Court is reversed, and that the decision of the board is vacated.

*So ordered.*