WILLIAM B. BEARD & others *vs.* TOWN OF SALISBURY
& others
(and a companion case).

Essex. March 7, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Municipal Corporations*, Ordinances and by-laws, Earth removal, Home rule. *Constitutional Law*, Home Rule Amendment.

Neither G. L. c. 40, § 21(17), authorizing town by-laws prohibiting or regulating the removal of soil and other materials, nor the Home Rule Amendment can be construed to allow a municipality, by adopting an earth removal ordinance or by-law, to prohibit transportation of sand, loam or gravel from the town. [440-442]

CIVIL ACTION commenced in the Superior Court on May 27, 1976.

The case was consolidated with Town of Salisbury *vs.* Edmund W. Bartlett & others and was heard by *Ankeles*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Helen Murphy Doona (James A. Murphy* with her) for William B. Beard & others.

*James Lagoulis*, for the town of Salisbury, submitted a brief.

HENNESSEY, C.J. In this case we are asked to consider the statutory and constitutional validity of a municipal by-law, adopted pursuant to G. L. c. 40, § 21 (17), prohibiting the removal of sand, loam, or gravel from the confines of the town of Salisbury. Aggrieved by the application of the by-law to their earth removal operations, the plaintiffs brought a successful action in the Superior Court

under G. L. c. 231A, § 2, seeking an order declaring the town's by-law to be invalid and unenforceable. The town appealed the court's ruling and we transferred the case here on our own motion. By a majority of this court, we affirm.

The facts are not in dispute. On March 16, 1968, the town adopted a by-law providing that the removal of soil, loam, or sand from any parcel of land not in public use shall be allowed only after a written permit is obtained from the board of selectmen. Article 19, § 1-1, Earth Removal By-Law.[1] Two years later the town amended its earth removal policy by adopting an additional by-law, art. 19A, stating that "[n]o person who is an inhabitant of the town or noninhabitant of the town, company or corporation shall remove sand, loam or gravel from land not in public use out of the confines of the Town of Salisbury, Mass."[2] Violation of art. 19A was made punishable by fines of $50 for the first offense, $100 for the second, and $200 for each subsequent infraction.[3]

The plaintiffs in this action comprise a group of businessmen consisting of an earth removal or material con-

___

[1] Pursuant to the by-law, issuance of an earth removal permit must be preceded by "a public hearing of which due notice is given." Article 19 also provides: "In issuing a permit under this By-Law, the Board of Selectmen may impose such conditions not specifically provided for herein as it may deem necessary for the adequate protection of the neighborhood and the town. Any conditions imposed by the Board shall be attached to and made part of the permit. The Board may, in its discretion, require a bond, certified check or other security for the compliance with said conditions or as evidence of good faith as to the completion of any proposed construction. The Board may, after a public hearing on proof of violation of any condition, revoke any permits so issued. No permit shall be issued under the provisions of this By-Law for a period of more than three years."

[2] Article 19A was approved by the Attorney General on April 23, 1970.

[3] The enabling statute for earth removal by-laws, G. L. c. 40, § 21(17), empowers municipalities to establish fines, in amounts not exceeding those sums specified by the town here, for violation of their earth removal regulations.

tracting broker, owners of gravel pits located within the town of Salisbury, and several independent truckers, all of whom are working in contractual relationship with one another. At various times since 1965, the broker and truckers purchased and transported gravel out of the bounds of the town of Salisbury. These individuals continued their intercity earth removal business after passage of art. 19A; and during April and May, 1976, the plaintiffs jointly acted to remove loam, sand, or gravel from Salisbury locations to highway construction sites outside the town.

In response to the plaintiffs' conduct, the board of selectmen of the town initially issued cease and desist orders to those plaintiffs owning gravel pits. However, when compliance with the orders was not forthcoming, the selectmen instituted criminal complaints against the plaintiff-truckers in the District Court of Newburyport for violation of art. 19A; subsequently, the town obtained a restraining order in the Superior Court forbidding the plaintiffs from committing any further violations of art. 19A. For their own part, the plaintiffs brought this action seeking declaratory relief. It was consolidated with the action by the town to enjoin the plaintiffs' removal operations permanently,[4] and on May 27, 1977, a judge in the Superior Court, ruling on the parties' stipulation of facts,[5] determined that art. 19A was "arbitrary, unreasonable and invalid." In consequence, the town's outstanding restraining order was dissolved.

On appeal the plaintiffs advance what is basically a three-pronged challenge against art. 19A. They assert: (1) that the by-law is an unreasonable, and therefore

---

[4] This action, Town of Salisbury *vs.* Edmund W. Bartlett & others, is likewise before us. We transferred the case here on our own motion, and affirm the judgment therein.

[5] The stipulation was limited to an identification of the parties, a recital of the history of the town's earth removal by-laws, and an explanation of the nature of the plaintiffs' business.

excessive, exercise of the power the Legislature has conferred on municipalities to develop earth removal ordinances or by-laws; (2) that the by-law poses an impermissible burden on interstate and intrastate commerce; and (3) that the by-law, by effectively prohibiting the continuation of their pre-existing gravel removal business, unconstitutionally deprives them of interests in property. Because we believe the by-law exceeds the regulatory limits provided by the statute and cannot be sustained as a home rule by-law, we do not reach the latter two issues raised by the plaintiffs.

In commencing our consideration of the plaintiffs' claim that art. 19A extends beyond a municipality's power to fashion local earth removal ordinances or by-laws, we turn first to the enabling act for such ordinances or by-laws, G. L. c. 40, § 21 (17).[6] Under the terms of this

---

[6] General Laws c. 40, § 21, as amended through St. 1977, c. 401, § 1, provides: "Towns may, for the purposes hereinafter named, make such ordinances and by-laws, not repugnant to law, as they may judge most conducive to their welfare, which shall be binding upon all inhabitants thereof and all persons within their limits. They may, except as herein provided, affix penalties for breaches thereof, not exceeding two hundred dollars for each offense, which shall enure to the town or to such uses as it may direct. Notwithstanding the provisions of any special law to the contrary, fines shall be recovered by indictment or on complaint before a district court, or by noncriminal disposition in accordance with section twenty-one D.

. . . .

"(17) For prohibiting or regulating the removal of soil, loam, sand or gravel from land not in public use in the whole or in specified districts of the town, and for requiring the erection of a fence or barrier around such area and the finished grading of the same. The superior court shall have jurisdiction in equity to compel compliance with any ordinance or by-law made hereunder. The penalty for violation of any ordinance or by-law made hereunder shall be as follows:— for the first offence, fifty dollars; for the second offence, one hundred dollars, and for each subsequent offence, two hundred dollars. Any order or by-law prohibiting such removal hereunder shall not apply to any soil, loam, sand or gravel which is the subject of a permit or license issued under the authority of the town or by the appropriate licensing board of such town or by the board of appeal, or which is to be removed in compliance with the requirements of a subdivision plan approved by the town planning board."

statutory provision, cities and towns are empowered to "prohibit or regulat[e] the removal of soil, loam, sand or gravel from land not in public use in the whole or in specified districts of the town." Originally enacted by way of St. 1949, c. 98, the law was passed in "order that removal of earth products [could] be subject to . . . regulation by a local community in the absence of a comprehensive zoning by-law." 1949 House Doc. No. 117, at 3. *Byrne* v. *Middleborough*, 364 Mass. 331, 333-334 (1973). *Butler* v. *East Bridgewater*, 330 Mass. 33, 36 (1953). See *North Reading* v. *Drinkwater*, 309 Mass. 200, 209 (1941).[7] The broad purpose of the statute is to give municipalities the freedom to devise local solutions to the deleterious effects brought about by unrestrained earth removal. *Butler, supra.*[8] See Dawson, Earth Removal and Environmental Protection, 3 Envt'l Aff. 166 (1974).

Our review of the instant by-law begins from the familiar proposition that local regulations, enacted pursuant to enabling statutes, are presumed valid. See *Moss* v. *Winchester*, 365 Mass. 297, 299 (1974).[9] We emphasize, more-

---

[7] Under the 1949 statute, municipalities are capable of proceeding either under a zoning by-law or under a separate by-law on earth removal. "The latter mode of regulation is available to towns which have zoning by-laws as well as to those which do not." *Byrne* v. *Middleborough*, 364 Mass. 331, 334 (1973).

[8] As this court observed in *Burlington* v. *Dunn*, 318 Mass. 216, 221, cert. denied, 326 U.S. 739 (1945): "The stripping of the top soil from a tract of land is not only likely to produce disagreeable dust and noise during the process, which may be prolonged, but, more important, after it is completed it leaves a desert area in which for a long period of time little or nothing will grow except weeds and brush. It permanently destroys the soil for agricultural use and commonly leaves the land almost valueless for any purpose. The effect of such an unsightly waste in a residential community can hardly be otherwise than permanently to depress values of other lands in the neighborhood and to render them less desirable for homes. If this process should be repeated upon tract after tract of suburban land the cumulative effect might well become disastrous to certain localities." See also *Saugus* v. *B. Perini & Sons*, 305 Mass. 403 (1940).

[9] See also *Canton* v. *Bruno*, 361 Mass. 598, 608 (1972); *Commonwealth* v. *Brask*, 354 Mass. 416, 418 (1968); *Commonwealth* v. *Brooks*,

over, that it is not this court's province to evaluate the wisdom of a matter of municipal policy. Because due regard must be accorded to the wishes of local residents, the only questions which this court or other courts may address, apart from those involving the constitutionality of a challenged regulation or the procedural prescriptions precedent to the law's adoption, are whether a local enactment extends beyond the authority conferred by its enabling statute or whether it exceeds the implied powers which are granted municipalities by the Home Rule Amendment.[10] As we have commonly held, a by-law or ordinance is invalid which oversteps the bounds of municipal power set by State law, or which is adopted as a mere pretext to effect regulations in excess of legislative authorization. See *Stow* v. *Marinelli*, 352 Mass. 738 (1967); *Cawley* v. *Northern Waste Co.*, 239 Mass. 540 (1921); *North Reading* v. *Drinkwater, supra.* Municipal regulations not directly authorized by statute — but permissible under the Home Rule Amendment — will be deemed void if they are inconsistent with any portion of the General Laws. See *Bloom* v. *Worcester*, 363 Mass. 136 (1973).

In light of the above principles, we believe that the Salisbury by-law fails because it lacks a basis in either the earth removal statute or in the Home Rule Amendment. It is the view of a majority of this court that nothing in G. L. c. 40, § 21(17), or the Home Rule Amendment can be construed to allow a municipality, by adopting an earth

---

354 Mass. 208, 209 (1968); *Schertzer* v. *Somerville*, 345 Mass. 747, 751 (1963); *Commonwealth* v. *Dobbins*, 344 Mass. 272, 275 (1962); *Woodland Estates Inc.* v. *Building Inspector of Methuen*, 4 Mass. App. Ct. 757, 761 (1976); *Knight* v. *Building Inspector of Shrewsbury*, 4 Mass. App. Ct. 826, 826 (1976); *Canteen Corp.* v. *Pittsfield*, 4 Mass. App. Ct. 289, 292 (1976); *Maider* v. *Dover*, 1 Mass. App. Ct. 683, 687 (1974).

[10] See art. 2, § 6, of the Amendments to the Constitution of the Commonwealth, as amended by art. 89 of the Amendments; *Del Duca* v. *Town Adm'r of Methuen*, 368 Mass. 1, 10-11 (1975); *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline*, 357 Mass. 709, 717-718 (1970).

removal ordinance or by-law, to regulate or prohibit intermunicipal *traffic* and thereby bar the movement of persons, vehicles, or property beyond its boundaries.

Related to this result, but not directly determining it, is our case *Stow* v. *Marinelli*, *supra*, wherein we adjudged that § 21 (17) was not "so broad as to permit the regulation of traffic." *Id.* at 742. Cf. *Goodwin* v. *Selectmen of Hopkinton*, 358 Mass. 164 (1970). In that case, unlike here, the town selectmen improperly revoked an earth removal permit on the expressly stated ground that such removal would generate undue traffic on a certain public way. But motive is not the only dispositive factor in deciding the validity of a local by-law or ordinance. We do not believe that the Legislature intended that the statute empowering local earth removal regulations was ever to be used in such a manner as to inhibit intermunicipal traffic — even, as in this case, where the impact on traffic may be characterized as an incidental effect of an otherwise proper purpose.

Authority for a regulation of this nature is similarly absent from the Home Rule Amendment. Although the Home Rule Amendment confers broad powers on municipal governments, see generally *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 357-358 (1973), it does not appear to be so expansive as to permit local ordinances or by-laws that, as here, regulate areas outside a municipality's geographical limits. See *Arlington* v. *Lillard*, 116 Tex. 446 (1927); Sandalow, The Limits of Municipal Power Under Home Rule: A Role for the Courts, 48 Minn. L. Rev. 643, 686 (1964). Moreover, as a general matter, the authority to regulate traffic on the ways of the Commonwealth is a power vested in the General Court, see, e.g., G. L. c. 90, § 31A. Although regulatory authority on this subject may be delegated by the Legislature, it is inconsistent with the present statutory scheme for a town to assume this power on its own.

We do not deny that, in certain circumstances, municipalities may have the power to restrict the move-

ment of refuse or other materials dangerous to health
and safety. However, the considerations underlying possi-
ble regulations such as these do not apply to loads of
gravel, whether coming into or going out of a municipal-
ity. Indeed, we are struck by the fact that the town's
regulation is in no sense essential to achieve whatever
environmental protection purposes might be locally
desired. The town has ample authority to regulate the
location and extent of earth removal within its jurisdic-
tion. In fixing such limits, it may even consider the quan-
tity of removal necessary for use within the town. But
once earth is removed from an approved pit, the town
cannot prevent its transportation to points outside the
town.

*Judgments affirmed.*