411 Mass. 744 (1992)
585 N.E.2d 737
MICHAEL J. COHEN, trustee, & others[1]
vs.
BOARD OF WATER COMMISSIONERS, FIRE DISTRICT NO. 1, SOUTH HADLEY, & another.[2]
Supreme Judicial Court of Massachusetts, Suffolk.
October 8, 1991.
January 29, 1992.
Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.
Keith C. Long (LeAnn J. Walls with him) for the defendants.
Thomas E. Kanwit for the plaintiffs.
LIACOS, C.J.
The board of water commissioners and the water department of Fire District No. 1 in South Hadley[3] appeal from a decision of the Land Court that the board's regulations concerning the placement of water meters do not apply to the Hadley Village Condominium (Hadley Village). The Appeals Court summarily affirmed the Land Court decision. 30 Mass. App. Ct. 1107 (1991). We took this case for further appellate review. We hold that the regulations apply to Hadley Village, and reverse.
1. Factual and procedural history. In 1872, by special act, the General Court endowed Fire District No. 1 in South Hadley (District) with certain powers concerning the public water supply within its borders. St. 1872, c. 114, § 1. The District, which encompasses approximately two-thirds of the geographic area of the town of South Hadley, exercises its power through elected and appointed officials. Id. at §§ 6, 9. An elected board of water commissioners governs the District's water supply and distribution system, and the water department manages and operates that system.
In 1954, and again in 1986, the board promulgated regulations regarding, inter alia, the placement of water meters. The 1954 regulations state that a "property owner must keep [a water] meter on his premises," and rule 2-B-2 of the 1986 regulations requires each unit of a condominium to have its own water meter.[4] Citing these regulations, on or about November 12, 1986, the board determined that a separate water *746 meter would have to be installed in each unit of Hadley Village, a thirteen-building, 180-unit complex built prior to 1974, if it was converted from apartments to condominium units.[5] The conversion occurred in 1987, but meters were not installed in the units.
In 1987, the trustees of the Hadley Village Condominium Trust, the governing body of the complex at the time, challenged the board's regulations[6] in the Land Court. They sought a judgment declaring that the regulations did not apply to Hadley Village, exceeded the authority of the district, were preempted by G.L.c. 183A (1990 ed.), and violated the equal protection guarantees of the State and Federal Constitutions.[7] In a November 1, 1988, decision, a judge of the Land Court ordered entry of a declaratory judgment, holding primarily that neither the 1954 nor the 1986 regulations *747 applied to Hadley Village. The judge reasoned that the board adopted the 1954 regulations at a time when the condominium form of property ownership was "little known," and thus that the board could not have intended its words to apply to that form of ownership. The 1986 regulations, according to the judge, apply only to future developments and not to preexisting buildings that are converted to condominium ownership. In addition, the judge made the following rulings: 1) the board did have implied authority to promulgate reasonable regulations, because the "necessity of any organization formalizing the method of its operation is certainly implied, if not expressed" in an enabling statute; 2) the regulations were not preempted by G.L.c. 183A, § 14, given the permissive nature of that statute; 3) application of the regulations to Hadley Village would violate the general rule against retroactive application of statutes; and 4) application of the regulations to Hadley Village would violate § 7 (5) of art. 89 of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment).[8]
2. Fire District No. 1 as a quasi municipal corporation. Fire District No. 1, South Hadley, is a quasi municipal corporation. See Hurlburt v. Great Barrington, 300 Mass. 524, 526-527 (1938); Seaver v. Onset Fire Dist., 282 Mass. 209, 213 (1933); President & Trustees of Williams College v. Williamstown, 219 Mass. 46, 47 (1914); Prout v. Pittsfield Fire Dist., 154 Mass. 450, 451 (1891); 1 E. McQuillin, Municipal Corporations § 2.28 (3d ed. 1981) (hereinafter, McQuillin). Like a true municipal corporation (for example, an incorporated city or town), the District is "a body corporate," St. 1872, c. 114, § 8, existing within definite geographic borders, and empowered by the State to carry out typically governmental or political functions. See McQuillin, § 2.07a. Unlike a true municipal corporation, it does not have general powers to regulate the internal affairs of its defined *748 area; it has only specific and limited responsibilities for fire protection and the public water supply. See St. 1872, c. 114, § 1; McQuillin, §§ 2.13, 2.23. To some extent, with its specialized public function, the District may be considered to be a municipal agency. See G.L.c. 48, § 90 (1990 ed.).
Thus, fire districts are analogous, but not identical, to municipal corporations.[9] Given this analogy and the relative infrequency with which we have dealt with the authority of fire districts to issue regulations, we look to the law of municipal corporations in examining the validity and applicability of the regulations at issue. We begin by considering whether either the 1954 or 1986 regulations apply to Hadley Village. Holding that they both do, we then turn to consider whether those regulations exceed the authority provided by the District's enabling statute or violate any provision of statutory or constitutional law.
3. Applicability of regulations to Hadley Village. In interpreting the regulations, we employ the traditional rules of construction for statutes, administrative regulations, and municipal ordinances. See Hellman v. Board of Registration in Medicine, 404 Mass. 800, 803 (1989) ("We interpret a regulation `in the same manner as a statute[,] and according to traditional rules of construction'"); Bell v. Treasurer of Cambridge, 310 Mass. 484, 489 (1941) (using traditional rule of construction to interpret municipal ordinance). In addition, just as "an agency's interpretation of its own rule is entitled to great weight," Finkelstein v. Board of Registration in Optometry, 370 Mass. 476, 478 (1976), the board's construction of its own regulation is also entitled to deference.[10]
We agree with the board that the 1954 regulations on their face require separate meters in each unit of a condominium. *749 The regulations are clear and unambiguous, and no resort to legislative history or "intent" seems warranted. See Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977). The regulations state that "[t]he property owner must keep [a water] meter on his premises easily accessible for reading and servicing at all times." This language clearly requires a water meter in each unit of property separately owned, and, "[w]here the statutory language is clear, it must be given its plain and ordinary meaning." Nationwide Mut. Ins. Co. v. Commissioner of Ins., 397 Mass. 416, 420 (1986). The regulations contain no language that limits the meaning of the term "property owner" so as to exclude the owner of one particular kind of property, namely, a condominium unit. The regulations would apply to condominium owners even if, as the judge of the Land Court wrote, such form of ownership was little known in 1954. "The object of a statute may be so general and its language so broad as to reach conditions fairly coming within its intent and sweep although such conditions did not come into existence until years after its enactment." Commonwealth v. Tilley, 306 Mass. 412, 415 (1940).
In light of our interpretation of the 1954 regulation, rule 2-B-2 of the 1986 regulations, which specifically mentions condominiums, simply adds detail to a preexisting general rule and imposes no new obligations concerning water meters on Hadley Village. Indeed, this is the board's interpretation of the rule. We hold that rule 2-B-2 merely clarifies regulations applicable to any building subject to the earlier regulations.
4. Regulations' validity. Regulations issued by an agency are presumptively valid so long as they are authorized by the enabling statute and do not violate any other statute or the Federal or State Constitution. See Beard v. Salisbury, 378 Mass. 435, 439-440 (1979). The trustees argue that the board's regulations, if applied to Hadley Village, are not authorized by St. 1872, c. 114, and do violate other statutory and constitutional provisions. We disagree.
a. Board's authority to promulgate regulations. Fire districts are entities of narrowly defined statutory powers. See *750 Williams College, supra at 47; Prout, supra at 451. Like the powers of municipal corporations prior to the Home Rule Amendment,[11] a fire district's powers are limited to those that are expressly granted by statute or necessarily implied by, or incident to, those express powers. Del Duca v. Town Adm'r of Methuen, 368 Mass. 1, 10 (1975). White v. Treasurer of Wayland, 273 Mass. 468, 470 (1930). 1 C. Antieau, Municipal Corporation Law § 5.01 (1989). The trustees argue that the District's enabling statute does not authorize it to promulgate the 1954 and 1986 regulations. We agree with the ruling of the judge of the Land Court that the Board has the power to promulgate reasonable regulations, including the two regulations at issue in this case.
The General Court expressly gave the board the broad power to provide for, and regulate, a public water system and to collect payments from those using the water.[12] While St. 1872, § 114, does not expressly allow the board to require water meters on every piece of property, that authority is implied from two express powers. First, the board has the broad authority to regulate use of the water supply. That power *751 includes prescribing measures designed to conserve water, such as requiring all property owners to have a meter so they may be aware of the amount of water used by them. The trustees argue that the measure will not aid conservation, but we do not evaluate the wisdom of the board's policy so long as it is authorized. See Beard, supra at 439-440. Second, the board has the express power to collect payments for water. In order to do so, the board may develop some system for determining how much water is used by each person charged. The power to collect payments for water use thus necessarily implies a power to require each property owner to have a measuring device, such as a water meter.
b. Preemption by G.L.c. 183A. The trustees argue that the board's regulations are preempted by the statutory scheme for condominiums. They refer in particular to G.L.c. 183A, § 14, which states that a city, town, or district "may" assess water charges to a condominium association.[13] We agree with the judge that there is no preemption. The word "may" is one "of permission and not of command. It should be construed, if possible, in accordance with its true signification." Brennan v. Election Comm'rs of Boston, 310 Mass. 784, 786 (1942). General Laws c. 183A, § 14, permits, but does not require, the board to assess water charges to the condominium association rather than individual owners; the statute's use of the word "may" indicates that other *752 assessment systems do not conflict with the over-all statutory scheme. We are not persuaded by the trustees' attempts to read "may" as "shall" here.
c. Home Rule Amendment. The judge raised sua sponte the notion that § 7 (5) of the Home Rule Amendment[14] prohibits the District from applying its regulations to Hadley Village. The Appeals Court did not reach this issue and the trustees themselves apparently concede that the Home Rule Amendment does not apply in the current case. We need go no further.
d. Retroactivity. The judge found that application of the board's regulations to Hadley Village would violate the general rule against retroactive application of statutes. See, e.g., Nationwide Mut. Ins. Co., supra at 421.[15] We have already held, however, that the 1954 regulations require separate water meters in each condominium unit, and that the 1986 regulations merely clarify the requirement. As Hadley Village was built well after 1954, and was purchased by the trustees and converted to condominium units after 1986, the Board's requirement is not being applied retroactively.
e. Equal protection clause. The trustees' final argument, not discussed in the Land Court judge's opinion, is that, by treating the owners of apartments and the owners of condominium units differently, the board is violating the right to equal protection of the laws under the Fourteenth Amendment to the Federal Constitution and arts. 1 and 10 of our Declaration of Rights. "For the purpose of equal protection analysis, our standard of review under the cognate provisions of the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution." *753 Dickerson v. Attorney Gen., 396 Mass. 740, 743 (1986). There is neither a suspect classification nor a fundamental interest at stake here. We consider the board's regulations under the rational basis test: If the regulations are rationally related to a legitimate State interest, they do not violate the equal protection clause of either Constitution. See, e.g., Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976); Dickerson, supra at 743.
The board's regulations pass the rational basis test. The judge found that the board promulgated the regulations with the purpose of conserving water and limiting the increases in future water costs. These are legitimate State interests. The regulations further these interests by allowing the board to charge owners directly for the water use on their property. It is reasonable for the board to conclude that owners will tend to take greater conservation measures if their bills will reflect a reduction in water consumption. The regulations do treat differently owners of apartment complexes and owners of condominium units, requiring the latter but not the former to have a water meter for each unit. Unlike the ownership of apartment buildings, the ownership of condominium units is distinct from the ownership of the condominium building. Thus, it is reasonable for the board to conclude that ownership of individual condominium units may change more often. To ensure continuous direct billing of unit owners (and thereby encourage conservation), the board reasonably may require separate water meters for each condominium unit.
5. Conclusion. The judgment of the Land Court is affirmed to the extent it holds that the board is authorized to adopt the regulations at issue and that these regulations are not preempted by G.L.c 183A, § 14. In all other respects the judgment is reversed. The 1954 and 1986 regulations apply to Hadley Village. This case is remanded to the Land Court for entry of a judgment consistent with this opinion.
So ordered.
NOTES
[1] Andrew L. Ross and Ira B. Sutton, who, with Michael J. Cohen, are trustees of the Hadley Village Condominium Trust.
[2] Water Department, Fire District No. 1, South Hadley.
[3] For convenience, we shall refer to the appellants as simply "the board," since it is the board of water commissioners that promulgated the regulations at issue in this case.
[4] The relevant portions of the 1954 regulations read as follows:

"The owner of property supplied will be charged for all water furnished the premises during his ownership. When ownership changes, the name and address of new owner should be given to water office, at once, so that bills may be properly rendered."
...
"The property owner must keep meter on his premises easily accessible for reading at all times."
The 1986 regulations were adopted in final written form on January 28 of that year. The relevant portion is rule 2-B-2 (Condominiums):
"Each dwelling unit shall be served by a separate pipeline and meter. If dwelling units are of cluster layout, branch pipelines larger than 3/4" may be required for service piping. However, each dwelling unit must be separately served and metered so that each dwelling unit can be denied water service without interrupting water service to other units."
The board has waived rule 2-B-2's requirement of a separate pipeline for each unit in the case of Hadley Village.
[5] The board allowed the complex to have one central meter when it consisted of apartment buildings.
[6] The trustees' original complaint dealt only with the 1986 regulations, and their brief is similarly focused. The board has supported its actions with both the 1954 and the 1986 regulations. We consider both regulations in light of the nature of the trustees' challenges.
[7] The judge did not consider the equal protection issue because she found for the plaintiffs on other grounds. Because we reach a contrary result, we must consider this issue.
[8] The applicability of the Home Rule Amendment was raised by the judge of the Land Court on her own motion. The parties have referred to this issue, and we consider it below.
[9] More specifically, fire districts resemble municipal corporations as they were viewed prior to the Home Rule Amendment. See infra note 11.
[10] Of course, "this principle is one of deference, not abdication, and courts will not hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." Finkelstein, supra at 478
[11] Prior to passage of the Home Rule Amendment in 1966, we gave the statutes conferring powers on municipal corporations a strict construction. "The Home Rule Amendment implicitly repudiated `Dillon's Rule.'... The rejected rule provided that `a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,  not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.' Dillon, Municipal Corporations, § 237, pp. 449-450 (5th ed. 1911). This rule had long served as the law in this Commonwealth." (Citations omitted; emphasis in original.) Del Duca v. Town Adm'r of Methuen, 368 Mass. 1, 10 (1975). We draw on the law of pre-Home Rule municipalities to define the powers of quasi municipal corporations today.
[12] "Fire district number one of the town of South Hadley is hereby authorized to supply itself and its inhabitants with pure water to extinguish fires, generate steam and for domestic and other purposes; and may establish public fountains and hydrants, and regulate their use and may discontinue the same and may fix and collect rents for the use of such water." St. 1872, c. 114, § 1.
[13] The entire text of G.L.c. 183A, § 14 (1990 ed.), reads as follows:

"Each unit and its interest in the common areas and facilities shall be considered an individual parcel of real estate for the assessment and collection of real estate taxes, but the common areas and facilities, the building and the condominium shall not be deemed to be a taxable parcel. Betterment assessments or portions thereof, annual sewer use charges, water rates and charges, and all other assessments or portions thereof, rates and charges of every nature, due to a city, town or district with respect to the condominium or any part thereof, other than real estate taxes, may be charged or assessed to the organization of unit owners; but any lien of the city, town or district provided by law therefor shall attach to the units in proportion to the percentages, set forth in the master deed on record, of the undivided interests of the respective units in the common areas and facilities."
[14] Section 7 (5) of the Home Rule Amendment states that "[n]othing in this article shall be deemed to grant to any city or town the power ... (5) to enact private or civil law governing civil relationships except as an incident to an exercise of an independent municipal power ..." (emphasis added).
[15] Retroactive application of a statute may have constitutional implications as well, see Nationwide Mut. Ins. Co., supra at 422, and the trustees discuss this issue briefly.