Roseman, J.
This case raises questions of how we govern ourselves. Plaintiffs, one of whom is a member of the town of Georgetown Board of Selectmen (the Board), seek a declaration that defendants, who are members of the Board, violated the Massachusetts Conflict of Interest Law, G.L. c. 268A. Plaintiffs allege that the defendants, Berube and Ogden, violated § 19(a) of the statute in appointing members to the Conservation Commission (the Commission), when defendants had a conflict of interest within the meaning of §19. Defendants admit they were in conflict but submit their disability, resulting in an inability of the Board to achieve a quorum, was relieved under the “rule of necessity,” Moran v. School Committee of Littleton, 317 Mass. 591, 593-94 (1945), permitting them to vote. For reasons expressed, the court disagrees and declares that by voting on the challenged appointments the defendants violated § 19(a). Accordingly, such a declaration is to issue on Count II of the complaint. Count I was dismissed at trial.
We begin -with a recitation of sterile matters and then turn to the grist of the controversy. The town of Georgetown has a three member board. At all relevant times, the plaintiff Olszewski and the defendants Berube and Ogden were its members. A quorum of two members is required to act. The Commission is a seven member body. Each Commission member is appointed by the Board for a term of three years, presumably on a staggered basis. On June 1, 1992, the term of four Commission members expired. The practice in Georgetown is to continue in office those members whose term expired until replaced or reappointed.
The origins of the political storm generating this controversy appeared in March, 1992. Berube, knowingly or unknowingly, permitted a portion of his land to be filled -without permit in apparent disregard of the Wetlands Protection Act (WPA) and the town’s bylaw. The Commission issued its order of conditions setting a deadline of June 18, 1992 as the time by which the fill was to be removed. On May 22, the maneuvering began. The Commission, by its chairperson the plaintiff Pelczarski, wrote the Board suggesting that Berube excuse himself from voting on the forthcoming appointments until his matter before the Commission was concluded. The Commission also suggested reappointment of the plaintiff Testaverde and appointment of a qualified replacement for Pelczarski, who was retiring. Seven days later, the Commission sought advice from the State Ethics Commission as to whether Berube’s matter constituted a conflict of interest disabling him from voting. On June 8, 1992, Berube followed suit with his own request. The controversy concerning appointments became more intense when it was learned that Ogden was contemplating taking new employment from a person who had, and expected to have, business before the Commission. Ogden asked town counsel to determine whether such employment would bring him into conflict with the Commission to the extent that he would be disabled from voting. Town counsel determined that he would. On June 20, no appeal from its order of condition having been taken, the Commission petitioned the Board to enforce its order by subjecting Berube to payment of a fine of $300.00 per day for each day the fill remained in addition to payment of the initial penalty of $500.00. The matter continued to fester. On August 20, Commission member Hart resigned. Another member, one Durney, by letter dated August 21, 1992, informed the Board that he was “interested in remaining on the Commission as it was configured”; otherwise he asked the Board to accept his resignation. Earlier, Testaverde had taken a similar position. On June 1, 1992, he informed the Board that if he did not receive unanimous support he would “step aside ... to clear the way for another person’s appointment. . .”
The matter came to a head in August. Town counsel had ruled that, a quorum lacking in the Board, by resort to the “rule of necessity” Berube and Ogden, despite their conflict, could vote on appointments. And so, on August 10, with three holdovers remaining on the Commission, the Board appointed one Gerakaris, a civil engineer, and an attorney, one Vitello, as new members to replace Testaverde and Pelczarski. Olszewski, in protest, refused to vote. The appointments were made in public session by votes of Berube and Ogden, who, prior to voting, announced their conflict. The process was repeated on August 24, when Hart and Durney were replaced by appointees True and Blanchard.
In June 1994, in virtually the same circumstance, town counsel by written opinion dated June 27, 1994, held that the rule of necessity could be invoked to permit two Board members, who were in conflict with *298 the Commission within the meaning of c. 268(A), to vote on appointments to the Commission. The Ethics Commission by letter dated July 7, 1994, concurred.
When a member of an administrative body is disqualified from a particular decision-making process due to bias, interest or prejudice, she/he is to leave the room where the deliberations are to take place. See Graham v. McGrail, 370 Mass. 133, 138 (1976). The rule of necessity arises when the sole appointing authority is prevented from exercising its authority “on account of the bias, interest or prejudice of its members” and a quorum, absent the disqualified members), does not exist. In that circumstance, the rule of necessity, if employed, allows board member(s) to remain and participate. Moran, supra., 593-4. •
The Ethics Commission has characterized the rule of necessity as one of last resort. Since the Ethics Commission is the primary civil enforcement agency for violations of c. 268A, its opinion on matters involving conflicts of interest is entitled to deference. See Cohen v. Board of Water Comm'rs Fire District No. 1, South Hadley, 411 Mass. 744, 748 (1992). Although an Ethics Commission decision on matters within its competence is to be given great weight, the courts are the final interpreter. See Finkelstein v. Bd. of Registration in Optometry, 370 Mass. 476, 478 (1976) (“the principle is one of deference not abdication . . .”). This court disagrees with the Ethics Commission and town counsel. Its reasons follow.
Violation of §19(a) — “a municipal employee who participates as such ... in a particular matter in which to his knowledge he . . . has a financial interest, shall be punished . . .,” — bears heavy criminal penalties. Graham, supra., 137. The question to be addressed thus, is whether the rule of necessity should provide relief from conduct that, otherwise, facially, may violate the statute? A reading of Graham persuades me that it should not. Holding that a school committee member may vote on budget items, except those in which a family member has a direct and immediate financial interest, the Supreme Judicial Court did not find it necessary in Graham to consider whether the rule of necessity could be invoked. But it did suggest that if the scope of § 19(a) reached the challenged conduct, it would have to consider alternatives to a rule of necessity. “Ordinarily, the wise course for one who is disqualified from all participation in a matter is to leave the room. We do not think he can be counted in order to make up a quorum... When, as here, there is no provision for substitutes, lack of a quorum because of disqualification presents several conceivably possible alternatives: (1) participation despite disqualification, under a rule of necessity, (2) decision without a quorum, (3) lack of power to make a decision ... In such cases we have sometimes applied a rule of necessity . . . That rule is not brought into play by the mere absence of a member or members, however. In the view we take of the scope of §19(a) it is unnecessary to consider the rule further.” (Citations omitted). Id., 138. That alternatives may be considered allows me to conclude that I have discretion in applying, or declining to apply, the rule. To make that determination, I look to the reason for the rule and its application: the public interest. I simply do not view cases such as Moran and Mayor of Everett v. Superior Court, 324 Mass. 144, 150-1 (1949), as mandating or calling for application of the rule. This is not a matter where the sole appointing authority, a witness or a prosecutor in a matter seeking removal of an appointee for dereliction, nevertheless may exercise, after hearing, the sole statutory responsibility of removal. The appointing authority in that circumstance indeed is prosecutor, witness, judge and fact finder. “Even if the mayor was biased or prejudiced against the commissioners, that fact would not disqualify him from preferring charges, conducting a hearing, and ordering the removal of the commissioners if the evidence was sufficient to support his action .. . It would be strange if officers shown to be remiss in the performance of their duties could enjoy immunity from a termination of their services simply because the only removing authority was biased or prejudiced against them. The public interest is not so easily helpless to protect itself.” Id., 150-1. It also would be strange that one shown to be in Berube’s circumstance, acting alone, be prohibited from participation, yet, in participation with another colleague similarly disabled, blessed to act. The justification, if one can be found, is that personal disability should not result in governmental paralysis. This court, however, finds no justification, meaning necessity, in a circumstance where there has been no showing that the Commission, at the times of the challenged appointments, was incapable of hearing and determining matters before it. (Compare Moran, 593. “It would be a reproach to the law if no remedy existed for the elimination” of a situation calling for the removal of a public employee for dereliction of duty.) Moreover, even if, arguendo, necessity existed, it is difficult to see how the public interest is promoted by permitting a selectman to vote on appointments to a Commission that had fined and penalized him for alleged violations of a town by-law at times when that particular matter remained unresolved and pending before it. Further discussion treads on the obvious.
In this circumstance the court rules that application of the alternative of necessity was error.
The declaration is to issue.