Page, J.
This is an action for review in the nature of certiorari, pursuant to G.L.c. 249, §4, of a decision of the Northborough Conservation Commission (“Commission”) denying the plaintiffs application for an order of conditions (“Application”) to build a single-family home with a subsurface sewage disposal system on land within the 100-foot wetlands buffer zone established by Northborough’s Wetlands Bylaws (“Wetlands Bylaws”). The plaintiffs complaint also includes a claim for relief in the nature of mandamus pursuant to G.L.c. 249, §5, to compel the Commission to issue an Order of Conditions for plaintiffs project (Count II); a claim for declaratory relief in the form of a binding determination of plaintiffs rights, status and duties with respect to the Wetlands Bylaws (Count III); and, finally, a “regulatory takings” claim (Count IV). After hearing and review of the administrative record, the court concludes that the Commission’s *130 decision must be affirmed and the Plaintiffs motion is DENIED.
BACKGROUND
On or about October 4, 2001, the plaintiff submitted a Notice of Intent (“NOI”) to the Commission seeking an Order of Conditions pursuant to G.L.c. 131, §40 and the Wetlands Bylaws authorizing the construction of a single-family home with conventional and alternative sewage disposal systems on property located at 180 West Street, Northborough, owned by Westwood Development Corp. (the “Properly”). The Property contains a Bordering Vegetated Wetland (“BVWj. Located within the BVW is a certified vernal pool. The home and the sewage disposal systems are proposed to be located within the 100-foot buffer zone. Therefore, the plaintiff sought an order of conditions under both state and local law. G.L.c. 131, §40, Wetlands Bylaws 1.3(e).
The proposed sewage disposal system consisted of a so-called alternative, zero discharge wastewater treatment system with composting toilets and recirculating washwater garden graywater system (the “Alternative System”). The Alternative System included a septic tank and a greenhouse in which treated wastewater would provide water and nutrients for plants to be grown in the greenhouse. In accordance with Title 5 of the State Environmental Code, 310 CMR 15.00 (“Title 5”), the Alternative System was designed with a backup, conventional Title 5 sewage disposal system (the “Conventional System”) to be installed in the event of the Alternative System’s failure. The Conventional System consisted of a sewage disposal tank and leachfield or “soil absorption system.”
On October 22, 2001, the Commission held a public hearing on this Application. The plaintiff was accompanied by David Del Porto of Sustainable Strategies, an ecological engineer, design and architect firm, who explained the Alternative System. Mr. Del Porto stated that construction of the Conventional System was also required which would provide the plaintiff and future owners the opportunity to choose between the two systems. Mr. Del Porto answered many questions about the potential failure of the Alternative System, explaining that if a problem were to arise the tank could be pumped and that alarms would be located in the greenhouse and on the house itself to warn the owners if the tank were to reach capacity. He stated that the alarm level was at 4/5 capacity which would allow owners time to pump the tank before it reached full capacity. The Commission also expressed concern regarding the impact on the system if additional people occupied the house, as well as the potential of future owners preferring to use the Conventional System rather than the Alternative System.
There was then discussion about whether the 100-foot buffer zone was a No Disturb buffer due to the proximiiy of the vernal pool. The plaintiff pointed out that the Commission does have the authority to grant a waiver under the Wetlands Bylaws 3.9. One of the Commissioners stated that waivers were usually granted with respect to replacement systems, however there was a project on Route 9 that was allowed to be built within the 100-foot buffer zone, but not as close as 50 feet. The meeting was then continued to November 5, 2001, however, the plaintiff requested a continuance to November 26, 2001.
In order to comply with both the state and local regulations, the plaintiff submitted revised plans to the Commission indicating that the house would be constructed 33 feet from the BVW and 71 feet from the vernal pool, the Alternative System would be 78 feet from the BVW and over 100 feet from the vernal pool, and the Conventional System would be 50 feet from the BVW and 83 feet from the vernal pool. Based on these revisions, the plaintiff requested a variance from the 100-foot setback requirement “to allow the conventional soil absorption system to be located 50 feet from the BVW.” R. 185. This revised plan was considered on November 26, 2001.
Both Mr. Del Porto and Lori Kennedy of Sustainable Strategies attended this meeting with the plaintiff to answer the Commission’s questions. In support of their position that location of the leachfield 50 feet from the BVW would not alter the resource area, topographical maps were submitted showing that the leachfield is hydrologically downgradient from the vernal pool. Some discussion focused on the location of abutters’ wells with respect to the tank of the Alternative System and the leachfield of the Conventional System and whether the lot would be considered unbuildable if it only relied on the Conventional System. The discussion ended with the plaintiff again encouraging the Commission to use its waiver-granting authority to allow construction of the sewage disposal systems.
During deliberations there was confusion as to how to treat the Alternative System and what regulations to apply to it. One of the Commissioners stated that it was his understanding that the issue was whether the Conventional System meets the regulations, taking into consideration the inclusion of waste composting toilets and the Alternative System. However, other Commissioners felt that the Conventional System should be evaluated on its own, anticipating the possibility that the Alternative System would fall. The Commission then voted 4-2 to deny the Application.
On December 10, 2001, the Commission issued the denial of the Application, citing the Wetlands Bylaws 3.8 as grounds for its decision which “require that a new septic system be located 100 feet from a resource area, i.e., outside the buffer zone of a bordering vegetated wetland.” The denial stated that “[n]either the conventional system nor the proposed greenhouse system meet this requirement (Sections 3.7 and 3.8 of the Regulations).” Additionally, the Commission considered “the proximity of the construction to the cer *131 tified vernal pool and the impact on the surrounding habitat,” stating that the “proposed construction on the vernal pool habitat contributed to the decision to deny the project.” The Commission identified the following wetlands interests as being impacted by the plaintiffs proposal: Private Water Supply: Groundwater Supply; Storm Damage Prevention; Prevention of Pollution; and Protection ofWildlife Habitat. Recognizing that a waiver could be granted, the Commission stated that they did not feel a waiver should be granted in this case.
Plaintiff subsequently filed a four-count complaint against the Commission.
DISCUSSION
A. COUNT I — Nature of Certiorari
Review in the nature of certiorari is available of judicial or quasi-judicial proceedings where no other form of review is available and review is necessary to correct a substantial injury or injustice arising from the proceeding at issue. See Town of Walpole v. Secretary of Executive Office of Environmental Affairs, 405 Mass. 67, 72 (1989); Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). The standard for certiorari review varies according to the nature of the action of which review is sought. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989); FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 684 (1997).
Here, the plaintiff offers two bases for review. First, he seeks review of the Commission’s interpretation that the Wetlands Bylaws requires a 100-foot setback of the leachfield for the Conventional System. Alternatively he argues that the Commission’s decision not to grant him a variance from this setback requirement was arbitrary and capricious.
1. Interpretation of the Wetlands Bylaws
“The general and familiar rule is that a regulation must be interpreted according to the intent of the officer or agency responsible for its promulgation ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.” Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp., 418 Mass. 737, 744-45 (1994) (citations omitted). Reviewing courts will accord great deference to administrative interpretations of statutes, particularly in the case where the agency is interpreting its own rules and regulations. Berrios v. Department of Pub. Welfare, 411 Mass. 587, 595 (1992) (“[regulations properly adopted by an administrative agency stand on the same footing as statutes and all rational presumptions are to be made in favor of their validity”).
The Wetlands Protection Act, G.L.c. 131, §40, “establishes minimum statewide standards leaving local communities free to adopt more stringent controls.” T.D.J. Development Corp. v. Conservation Commission of North Andover, 36 Mass.App.Ct. 124, 125-26 (1994), quoting Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970). A municipality may adopt bylaws or ordinances that impose more stringent controls than the standards set by the Legislature, and these more stringent requirements trump the state requirements. Id.
Under the Wetlands Bylaws, “[a]ny proposed work which falls within one hundred (100) feet of the [named] resource areas . . . must be approved by the Conservation Commission.” Section 1.3. The General Provisions of the Wetlands Bylaws state that an applicant who proposes construction within the 100-foot buffer zone has the
burden of proving by a preponderance of credible evidence that the work proposed in the Application for Permit will not have an unacceptable significant or cumulative effect upon the wetland values protected by the Wetlands Bylaw. Failure to provide such evidence to the Commission shall be sufficient cause for the Commission to: 1) deny a Permit; 2) grant a Permit with conditions; or 3) request permission to continue the hearing in order that the applicant or others may present additional evidence.
Wetlands Bylaws 3.7. This is a heavy burden as the presumption works against the applicant as “[projects undertaken within 100 feet of a resource area have a high likelihood of altering that area, either during construction or from routine operation of the completed project. In the experience of the Commission, projects in that part of the buffer zone closest to the wetland almost inevitably cause degradation of the resource area.” Wetlands Bylaws 4.2.1. In order for the Commission to assess the possible effects on resource areas, the Wetlands Bylaws set forth presumptions with performance standards that may overcome such presumptions.
At issue here is the presumption set forth in the General Provisions of Section 3 which refers to subsurface sewage disposal systems:
A subsurface sewage disposal system that is to be constructed in compliance with the requirements of Title 5 of the State Environmental Code (310 CMR 15.00 as amended) or more stringent Board of Health Requirements shall be presumed to protect the resource areas identified in 6-04-0202 of the Wetlands Bylaw, but only if none of the components of said system is located within [certain] resource areas and only if the leaching facility of said system is set back at least one hundred (100) feet horizontally from the boundary of said resource areas, and if the tank of said system is set back at least fifty (50) feet horizontally from the boundary of said *132 resource areas, or a greater distance as may be required by the Board of Health . . . This presumption, however, shall apply only to the impacts of the discharge from the sewage disposal system, and not to the impacts from the construction of that system, such as erosion and siltation from the excavation, placement or fill, or removal of vegetation . . . This presumption may only be overcome by credible evidence from a competent source that compliance will not protect the interests identified in the Wetlands Bylaw.
Wetlands Bylaws 3.8. While there is no dispute that the presumption does not apply as the leachfield is within 100 feet of the BVW, the Commission has interpreted Section 3.8 to require a 100-foot setback for leachfields. The plaintiff, however, argues that Section 3.8 should not even be referenced and that other than the state regulations requiring a 50-foot setback, the Commission is limited to applying the 30-foot setback requirement found in the performance standards in Section 4, specifically Section 4.2.[1]
The plaintiffs argument must fail as it is illogical to believe that the Commission would make specific reference to setback distances for leaching facilities and tanks if it did not intend these distances to be setback requirements.[2] Because septic systems pose different risks to wetland values than ordinary construction because of ongoing discharge of sewage and potential contamination of wetland resource areas, common sense dictates that greater setback distance requirements would be established than for other, ordinary construction. The plaintiff has failed to establish that the Commission’s interpretation is arbitrary and capricious, especially in light of the fact that the plaintiffs own engineers interpreted the Wetlands Bylaws to require a variance from the 100-foot setback requirement. See Cohen v. Board of Water Commissioners, Fire District No. 1, South Hadley, 411 Mass. 744, 748 n.10 (1992) (“[the] principle is one of deference, not abdication, and courts will not hesitate to overrule agency interpretation of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself’).
2. Denial of Waiver
Alternatively, the plaintiff argues that the Commission had authority to grant a waiver from strict compliance with the Wetlands Bylaws under Section 3.9 and its decision not to grant a waiver was arbitrary and capricious. Where an administrative board has broad discretion to determine whether to grant exemption from its regulations, the court’s review is limited to determining whether the decision is arbitrary or capricious or an abuse of discretion. T.D.J. Development Corp. v. Conservation Commission of North Andover, 36 Mass.App.Ct. 124, 128 (1994). “A decision is not arbitrary and capricious unless there is no ground which reasonable men might deem proper to support it.” Id. (internal quotations omitted). See Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 559 (1954) (no one is entitled to a variance).
Here, the plaintiff asserts that because no evidence established that the resource area would be affected he is entitled to a waiver. However, this misapprehends the burden of proof. It is the plaintiffs burden to show by a preponderance of the evidence that his proposed construction will not affect the resource areas as any project within the 100-foot buffer zone is presumed to alter the resource areas. Wetlands Bylaws 3.7 and 4.2.1. Indeed, the plaintiffs own engineer stated that the proposed construction would provide “the best shot at protecting the environment.” Additionally, the letter submitted to the Commission requesting a variance from the 100-foot setback requirement stated that a variance was required as there were “no other practicable alternatives with less adverse effects on the interests identified in the Northborough Wetland Bylaw and the MA Wetland Protection Act.” Therefore, it cannot be said that as a matter of law the plaintiff established that there would be no adverse impact to the resource areas.[3] Accordingly, the Commission’s decision must be upheld.
B.COUNT II — Mandamus
Having found that the Commission was not required to approve the Application, the plaintiffs mandamus claim must be dismissed.
C.COUNT III — Declaratory Judgment
For the reasons explained in Bermant v. Board of Selectmen of Belchertown, 425 Mass. 400, 404 (1997), declaratory judgment is not available here, and accordingly Count III must be dismissed.
D.COUNT IV — Regulatory Taking
The plaintiff argues that application of the Commission’s Regulations has deprived him of all economically beneficial use of his property. Although argued in their papers, this issue was not addressed at oral argument and the defendant has requested a separate proceeding to address this issue after the resolution of the remainder of the Complaint. Therefore, the court takes no action on this issue at this time.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for the defendant on Counts I, II and III

 The presumption set forth in the Wetlands Bylaws 4.2.2 states:
Within a buffer zone all activities that involve removal of vegetation (except routine lawn and garden maintenance), grading, filling, excavation, erection of permanent structures, application of inorganic fertilizers (excluding lime and other soil treatments approved by the commission) or application of pesticides whose labels indicate they are toxic to aquatic organisms, is presumed to alter the adjacent resource areas. This presumption may be overcome by meeting the general performance standards set forth below.
*133 This presumption may be overcome if it is shown that:
No foundation, building, road, sidewalk, or other permanent structure shall be placed within thirty (30) feet of any resource area. Furthermore, no grading, filling, excavation, removal of vegetation or other construction activity shall be allowed within fifteen (15) feet of said resource areas. Notwithstanding the above, the Commission may allow work closer to resource areas if needed . . .
Wetlands Bylaws 4.2.3.

 The intent of the Wetlands Bylaws is set forth in the overall purpose which reads:
The purpose of the Wetlands Bylaw is to protect the wetlands, related water resources and adjoining land areas in the Town of Northborough by prior review and control of activities deemed by the Conservation Commission likely to have a significant or cumulative effect upon wetland values, including but not limited to the following: public or private water supply, groundwater, flood control, erosion and sedimentation control, storm damage prevention, water pollution prevention, fisheries, freshwater shellfish, wildlife habitat, recreation, aesthetics, agriculture and aquaculture values (collectively, the “wetland values protected by this chapter”).
Wetlands Bylaws 1.2.

 Additionally, it was not error for the Commission to consider the existence of a vernal pool within the BVW when evaluating the wetland values to be protected as the list set forth in the Wetlands Bylaws Purpose provides for protection of wildlife habitat.